# EXHIBIT 1

| PROBATION VIOLATION FINDING & DISPOSITION | 11-1145 | Trial Court of Massachusetts District Court Department |
|---|---|---|
| PROBATIONER'S NAME: Daniel Sullivan | | COURT NAME: Plymouth DC |
| | | PCF NO. 2448650 |

## I. FINDING ON ALLEGED VIOLATION

In the case(s) captioned above, the Court FINDS as follows:

☐ **NO VIOLATION OF PROBATION FOUND.**

☒ **VIOLATION OF PROBATION FOUND.** The probationer named above is found to have committed the following violation(s) of probation:

- ☐ Violated CRIMINAL LAW(s), namely: _____
- ☐ Failed to attend or complete the following PROGRAM as ordered: _____
- ☐ Failed to comply with the following TESTING REQUIREMENT(s) as ordered: _____
- ☐ Failed to make the following PAYMENT(s): _____
- ☐ Failed to REPORT as required by the probation officer as follows: _____
- ☒ Failed to comply with OTHER PROVISION(s) of the Order of Probation Conditions, namely: non-compl w/ HPS

This finding is based on ☐ PROBATIONER'S ADMISSION, or ☐ A HEARING and the preponderance of the credible evidence presented, specifically, the following TESTIMONIAL OR DOCUMENTARY EVIDENCE:

☐ **HEARSAY EVIDENCE.** In making this finding, the Court relied SOLELY ON HEARSAY EVIDENCE and finds that such evidence was substantially trustworthy and demonstrably reliable and, if a violation of criminal law(s) was found, that there existed good cause for the absence of a person(s) with personal knowledge of such evidence.

- ☐ Its detail suggests personal knowledge by the source.    ☐ The source was disinterested.
- ☐ The source was under oath or subject to prosecution or disciplinary action for false statements.
- ☐ The information was corroborated by the probationer.
- ☐ The source could not appear personally because of   ☐ distance.   ☐ costs.   ☐ scheduling difficulties.

## II. DISPOSITION (to be completed only upon a finding of violation)

- ☐ The Order of Probation Conditions is hereby vacated and probation is **TERMINATED**.
- ☐ The current conditions of probation are to be **CONTINUED**; probationer admonished.
- ☒ The Order of Probation Conditions previously issued is hereby **MODIFIED** as follows: [The probationer must sign a new Order] Curfew 11:30 pm to 5:00 am / otherwise same conditions to stay
- ☐ **PROBATION REVOKED.** The Order of Probation Conditions is hereby REVOKED for the following reason(s):
  - ☐ The safety of the public and/or an individual person or persons.   ☐ The recommendation of the District Attorney.
  - ☐ The seriousness of the new offense that has been proved by a preponderance of the evidence.
  - ☐ The unlikelihood that the rehabilitative purpose of probation will be achieved.
  - ☐ The probationer's record of previous violations.   ☐ The recommendation of the probation department.
  - ☐ The seriousness of the offense for which probation was ordered.
  - ☐ Other: _____

SENTENCE IMPOSED AFTER PROBATION REVOCATION:

DATE: 1-27-2012    SIGNATURE OF JUDGE: X _Meenan_

7-29 (8/04)    PROBATIONER COPY

LAW OFFICES
OF
# SULLIVAN & SWEENEY, L.L.P.

WILLIAM F. SULLIVAN
RICHARD J. SWEENEY
SABRINA E. BONANNO

JOSEPH F. KILLION
(1933–2011)

PARALEGALS
MARY E. PLAYER
MAUREEN PLAYER

277 NEWPORT AVENUE
QUINCY, MA 02170
(617) 328-6900
FAX (617) 328-6655
www.SullivanAndSweeney.com
Email: mail@SullivanAndSweeney.com

July 10, 2012

Probation Officer Melissa Melia
Probation Department
Plymouth District Court
52 Obery Street
Plymouth, MA 02360

      Re: Comm. v. Daniel Sullivan
          Docket # 1159CR1145

Dear Ms. Melia,

      This is to inform you that for the past two mornings, the GPS monitor on my client has gone off in error. He has called the GPS officials both times right away and he was told that he was all set and that there had been errors either in confusing him with another probationer or confusion with his curfew times. I wanted to make sure that you were aware of the problems and the fact that they had nothing to do with Mr. Sulllivan's adherence to his terms of probation. I did not want these mistakes made by the GPS office to be seen as any evidence of Mr. Sullivan not complying fully. If you have any questions or concerns, please do not hesitate to contact me.

Sincerely,

William F. Sullivan

WFS:mp

# EXHIBIT 2

| | Invoice Number | Account Number | Date Due | Page |
|---|---|---|---|---|
| | 2771920469 | 385958801-00001 | Past Due | 6 of 13 |

## Detail for Daniel Sullivan: 617-448-7718

## Voice, continued

| Date | Time | Number | Rate | Usage Type | Origination | Destination | Min. | Airtime Charges | Long Dist/ Other Chgs | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 6/21 | 8:02P | 617-851-5339 | Peak | M2MAllow | Woburn MA | Boston MA | 1 | — | — | — |
| 6/22 | 7:51A | 508-208-6158 | Peak | M2MAllow | Quincy MA | Incoming CL | 1 | — | — | — |
| 6/22 | 7:54A | 617-851-5339 | Peak | M2MAllow | Quincy MA | Boston MA | 3 | — | — | — |
| 6/22 | 7:57A | 617-851-5339 | Peak | M2MAllow,CallWait | Quincy MA | Incoming CL | 8 | — | — | — |
| 6/22 | 8:55A | 218-486-1616 | Peak | PlanAllow | Winchester MA | Hawley MN | 13 | — | — | — |
| 6/22 | 9:06A | 508-747-8400 | Peak | PlanAllow,CallWait | Winchester MA | Incoming CL | 2 | — | — | — |
| 6/22 | 9:08A | 218-486-1616 | Peak | PlanAllow | Winchester MA | Hawley MN | 2 | — | — | — |
| 6/22 | 9:10A | 617-328-6900 | Peak | PlanAllow | Winchester MA | Quincy MA | 3 | — | — | — |
| 6/22 | 9:13A | 617-905-1553 | Peak | PlanAllow | Medford MA | Dorchester MA | 15 | — | — | — |
| 6/22 | 9:46A | 630-605-4404 | Peak | PlanAllow | Quincy MA | Naperville IL | 2 | — | — | — |
| 6/22 | 9:55A | 617-471-6400 | Peak | PlanAllow | Weymouth MA | Quincy MA | 2 | — | — | — |
| 6/22 | 10:04A | 617-851-5339 | Peak | M2MAllow | Marshfield MA | Boston MA | 3 | — | — | — |
| 6/22 | 10:08A | 617-593-0092 | Peak | M2MAllow | Duxbury MA | Incoming CL | 3 | — | — | — |
| 6/22 | 10:10A | 617-512-7516 | Peak | M2MAllow,CallWait | Duxbury MA | Incoming CL | 5 | — | — | — |
| 6/22 | 10:27A | 617-851-5339 | Peak | M2MAllow | Plymouth MA | Incoming CL | 3 | — | — | — |
| 6/22 | 10:33A | 617-851-5339 | Peak | M2MAllow | Plymouth MA | Incoming CL | 1 | — | — | — |
| 6/22 | 10:34A | 617-851-5339 | Peak | M2MAllow | Plymouth MA | Incoming CL | 1 | — | — | — |
| 6/22 | 11:02A | 617-328-6900 | Peak | PlanAllow | Plymouth MA | Quincy MA | 7 | — | — | — |
| 6/27 | 3:23P | 617-626-6338 | Peak | PlanAllow | Plymouth MA | Boston MA | 4 | — | — | — |
| 6/27 | 3:26P | 617-626-6800 | Peak | PlanAllow | Plymouth MA | Boston MA | 3 | — | — | — |
| 6/27 | 4:42P | 978-365-2970 | Peak | PlanAllow | Plymouth MA | Clinton MA | 3 | — | — | — |
| 6/27 | 4:45P | 978-365-2970 | Peak | PlanAllow | Plymouth MA | Clinton MA | 3 | — | — | — |
| 6/27 | 4:58P | 630-605-4404 | Peak | PlanAllow | Plymouth MA | Naperville IL | 4 | — | — | — |
| 6/27 | 5:02P | 630-605-4404 | Peak | PlanAllow | Plymouth MA | Incoming CL | 4 | — | — | — |
| 6/27 | 8:54P | 781-369-1358 | Peak | PlanAllow | Plymouth MA | Incoming CL | 14 | — | — | — |
| 6/27 | 9:08P | 781-369-1358 | Off-Peak | N&W | Plymouth MA | Winchester MA | 1 | — | — | — |
| 6/27 | 9:08P | 781-369-1358 | Off-Peak | N&W | Plymouth MA | Winchester MA | 1 | — | — | — |
| 6/27 | 9:09P | 781-369-1358 | Off-Peak | N&W | Plymouth MA | Winchester MA | 18 | — | — | — |
| 6/27 | 9:56P | 000-000-0086 | Off-Peak | N&W,CallVM | Plymouth MA | Voice Mail CL | 5 | — | — | — |
| 6/27 | 10:19P | 617-851-5339 | Off-Peak | N&W | Plymouth MA | Incoming CL | 6 | — | — | — |
| 6/27 | 10:32P | 781-585-2698 | Off-Peak | N&W | Plymouth MA | Kingston MA | 1 | — | — | — |
| 6/27 | 10:32P | 781-724-6368 | Off-Peak | N&W | Plymouth MA | Weymouth MA | 1 | — | — | — |
| 6/27 | 10:33P | 781-724-6368 | Off-Peak | N&W | Plymouth MA | Weymouth MA | 9 | — | — | — |
| 6/27 | 10:42P | 781-724-6368 | Off-Peak | N&W | Plymouth MA | Weymouth MA | 1 | — | — | — |
| 6/27 | 10:43P | 781-724-6368 | Off-Peak | N&W | Plymouth MA | Weymouth MA | 1 | — | — | — |
| 6/27 | 10:43P | 781-724-6368 | Off-Peak | N&W | Plymouth MA | Weymouth MA | 2 | — | — | — |
| 6/27 | 11:31P | 978-365-2970 | Off-Peak | N&W | Plymouth MA | Clinton MA | 3 | — | — | — |
| 6/27 | 11:50P | 978-365-2970 | Off-Peak | N&W | Plymouth MA | Clinton MA | 2 | — | — | — |
| 6/27 | 11:55P | 978-365-2970 | Off-Peak | N&W | Plymouth MA | Clinton MA | 1 | — | — | — |
| 6/27 | 11:56P | 978-365-2970 | Off-Peak | N&W | Plymouth MA | Clinton MA | 1 | — | — | — |
| 6/28 | 10:59A | 800-347-4779 | Peak | PlanAllow | Plymouth MA | Toll-Free CL | 1 | — | — | — |
| 6/28 | 10:59A | 617-626-6800 | Peak | PlanAllow | Plymouth MA | Boston MA | 48 | — | — | — |
| 6/28 | 11:57A | 866-408-4070 | Peak | PlanAllow | Quincy MA | Toll-Free CL | 1 | — | — | — |
| 6/28 | 11:57A | 617-851-5339 | Peak | M2MAllow | Quincy MA | Boston MA | 8 | — | — | — |
| 6/28 | 12:04P | 617-851-5339 | Peak | M2MAllow | Quincy MA | Incoming CL | 1 | — | — | — |

# EXHIBIT 3

# Final arguments made in probation trial

Andy Metzger, State House News Service

- Click to share on Twitter (Opens in new window)
- Click to share on Google+ (Opens in new window)
- Share on Facebook (Opens in new window)
- Click to share on Pinterest (Opens in new window)



(Associated Press) - John O'Brien, former Massachusetts probation department commissioner, stands outside the federal courthouse in Worcester, Mass. Jury selection began Monday, May 5, 2014, for a federal trial for O'Brien and two of his deputies, charged with rigging the agency's hiring apparatus to secure jobs for people who had been recommended by powerful state legislators.

Related Coverage

- ## Amid hazy testimony, Popeo says probation case "falls flat"

- ## Witness: O'Brien suggested probation jobs were "never enough"
- ## Official admits to "liberally" scoring candidates for jobs
- ## Reps: DeLeo, aide outlined job-filling opportunities in probation

BOSTON, JULY 16, 2014…..Closing arguments were delivered in U.S. District Court Tuesday in the trial of former Probation Commissioner John O'Brien, former first deputy commissioner Elizabeth Tavares and former deputy commissioner William Burke, who are fighting charges they committed fraud and were involved in racketeering by rigging hiring in the department. The jury began its deliberations Wednesday morning.

The following is a summary of the closing arguments.

PROSECUTION: "Jack O'Brien, Elizabeth Tavares and William Burke cheated people out of jobs, people like Sheila Dintaman," said assistant U.S. Attorney Karin Bell, referring to the three defendants and one of the people who was allegedly passed over for a less qualified candidate with political backing. Bell said, "He hired candidates solely based on their political connections." Bell said O'Brien "created a sham final round interview" where candidates would be scored in an order pre-determined by O'Brien. Bell said O'Brien instructed his deputies, such as Francis Wall and Patricia Walsh, to lie under oath in arbitration proceedings and "falsified documents" asserting a merit-based hiring process had been followed. Bell said "it wasn't enough," and went on to describe how, she said, O'Brien gave jobs to his ally Rep. Robert DeLeo so he could distribute them to members to help DeLeo in the contest for the post of House speaker. "Jack O'Brien gave $40,000-per-year jobs out to Bob DeLeo…. so he could become the next speaker of the House," Bell said. Bell quoted former probation human resources director Janet Mucci in a voicemail she left on a regional administrator's answering machine, explaining a quid pro quo between O'Brien and the Legislature. "The defendants catered to members of the state Legislature because they wanted to influence those members," Bell said. She said, "That's not patronage. That's fraud, and it's bribery… It's also racketeering." Bell said the policy and procedures manual disallowed patronage hiring, and Chief Justice of Administration and Management Robert Mulligan was suspicious, but kept in the dark by probation officials' deceit. "They had to break the rule and then they had to cover it up," said Bell, who said their goal was to "hire the most politically connected people and make it look legitimate." Bell said O'Brien pre-selected candidates sometimes before positions were posted. "From that point on the rest of the process was a complete sham, a fraud," Bell said. She said, "There's nothing merit-based about that process." Bell said many people testified about passing or receiving names, and said they used the words "consideration" or "we like," or there is "an interest" in the preferred candidate. "It doesn't matter how you say it. It means the same thing to everyone who heard it," Bell said. She said Ellen Slaney, a former probation official, got "called to the carpet" by O'Brien in 2000 because she couldn't get Douglas MacLean a job, and was later told to do audits

of probation departments in various courthouses, and said after Ed Dalton failed to move Elzy Tubbs's name through an interview panel, Tavares told him, "Jack O'Brien questions your loyalty." "You're going to move that person or there's going to be consequences," Bell said. She said judges sometimes made it difficult because they weren't in on the scheme and said judges are "the most objective ones" in the hiring process. She said, "You know that the fix was in" in the final round interview where Fran Wall and Pat Walsh interviewed candidates. She said the final round interview "makes no sense" except that it insulated O'Brien from having to explain his selection under oath at an arbitration proceeding. "Fran Wall told you he never ranked a number one candidate based on merit," Bell said. She said, "He didn't even pay attention to the candidate's answers." Bell said that after Wall said he was concerned about having to lie, O'Brien said, "Protect the process, so we can have a good relationship with legislators." Bell said O'Brien's signature on a certification that the Trial Court manual was followed meant for Chief Justice of Administration and Management that it is a "merit" hire. "Every single time that Jack O'Brien signed that line, it was a lie," Bell said.

Bell spoke specifically about several specific hires.

— Patrick Lawton was a "drug addict" who couldn't make it into the top eight candidates in an intermediate interview, but was hired after the list of finalists was expanded with the support of Senate President Therese Murray, Bell said.

— Patricia Mosca was a "long-time supporter" of Sen. Therese Murray who "wanted a better pension" after working in the Department of Transitional Assistance, though she "didn't want to admit that" during her testimony, Bell said. The judge on an intermediate panel ranked her near the bottom, though she was ranked number 2 in the final round, and received a job, Bell said.

— Melissa Melia was initially rejected, but after she received the recommendation of Senate President Therese Murray "everything changes," Bell said.

— Kelly Manchester "barely met the minimum requirements," but was the girlfriend of Sen. Mark Montigny, and Tavares passed the name to another probation official, Bell said. Bell said Pat Walsh complained to Tavares as Manchester was ranked number 1 in the final round. Bell said, "Keep that in mind when you're asking yourself what Elizabeth Tavares knew."

— Michael White and Kevin O'Brien both had a recommendation from former Rep. Steve Walsh through Speaker Salvatore DiMasi, Bell said.

— Mari Elena Sanchez was sponsored through Speaker Salvatore DiMasi by Rep. Michael Costello, Bell said. She said the "suggestion" that Sanchez was an affirmative action hire is weakened by the fact that a judge on the hiring panel preferred another Latin American woman for the post.

— Antonio Mataragas was supported by former Sen. Fred Berry and O'Brien's certification on his hiring document is "another lie," Bell said.

Subscribe
Starting at 99 cents

Members
Sign In

# Two detail how they got probation jobs

By Milton J. Valencia | GLOBE STAFF JUNE 05, 2014

Two people who obtained their probation jobs with help from state Senate President Therese Murray took the witness stand in a federal corruption trial Wednesday as prosecutors sought to show that they were hired only because they were politically connected.

Melissa Melia, the daughter of a State Police detective lieutenant assigned to the Cape and Islands district attorney's office, asked Murray to help her get a job, according to prosecutors. And Patricia Mosca was a worker in the Department of Transitional Assistance who lobbied one of Murray's aides for the senator's support in getting a job, said prosecutors, who added that Mosca was looking to boost her pension.

Both witnesses agreed in their testimony Wednesday that they contacted Murray's office for help, though they believed they were qualified.

"I hated my [state welfare] job," said Mosca, who was 56 when she first applied for the probation post in 2007. "I loved probation, so I took a pay cut."

She left the probation job a year later with, prosecutors argued, a better pension.

Melia had applied for the probation job three times over more than five years before she was hired. Prosecutors sought to show that she was ultimately hired because of the help of Francine Gannon, one of Murray's top aides, who had testified she had recommended Mosca and Melia for the jobs.

"It's my understanding they could guide me and help me in the process," Melia said of her contacts with Gannon.

# Ortiz: Probation convictions reflect 'serious corruption'

**BY ANDY METZGER**
State House News Service

BOSTON — Job-seekers shuttled through Senate President Therese Murray's office were hired by the state probation department in a criminally fraudulent manner and jobs granted to members of the House to fill were illegal gratuities, a jury determined Thursday, convicting three former probation officials of a bevy of charges.

"Getting a verdict like this just strengthens our resolve to identify corrupt public officials and bring them to justice just like we did here today," FBI Special Agent in Charge Vincent Lisi told reporters. He said, "This should send a message to any corrupt public officials out there that there is nothing that is going to get in our way from identifying them and bringing them to justice just like we did here today."

Former Probation Commissioner John O'Brien and his former deputy Elizabeth Tavares were convicted of racketeering and on four of the eight


**John O'Brien**

counts of mail fraud they faced. Former deputy William Burke III, Tavares and O'Brien were convicted of conspiracy to commit racketeering.

The jury's reading of the verdict was punctuated by sobs from O'Brien's family and supporters along with a shouted accusation from someone in the courtroom that government is corrupt." The reading of the verdict was uninterrupted by the collapse of O'Brien's wife Laurie, who was wheeled out of the courtroom in a stretcher.

Defense attorneys, who appeared shaken by the verdict, declined to comment on the prosecution's case, while assuring reporters that they would attempt to overturn the jury's ruling. Burke's attorney John Amabile, said he would "exhaust every avenue to try to undo what we believe is a wrong verdict." O'Brien's attorney Stellio Sinnis, said, "I think that in the end they'll be vindicated."

"It was unanimous," one of the jurors who declined to identify himself told the News Service. He said, "We did our jobs."

A woman who served on the jury said coming to a decision was "difficult" and said, "You're dealing with people's lives."

Judge William Young instructed the defendants themselves not to comment on the jury's verdict.

Sentencing was set for Tuesday, Nov. 18. While the alleged crimes carried a statutory maximum penalty of up to 20 years, sentencing guidelines could cap any potential prison term to much less than that.

Beyond the direct effect on O'Brien, Tavares and Burke

the verdict could lend more credibility to the prosecution's theory — which has never been fully tested before a jury — that Speaker Robert DeLeo conspired with O'Brien to offer jobs in the electronic monitoring program to his supporters to assist in his ultimately successful campaign for the speakership.

As part of O'Brien's racketeering charge, the jury determined it was proven that several jobs in the electronic monitoring program were offered as illegal gratuities, while rejecting the charge they were offered as bribes.

DeLeo has forcefully denied that claim, and Gov. Deval Patrick, a former civil rights chief for the Department of Justice, called it "very unusual" that DeLeo would be accused of participating in the conspiracy without being given a chance to defend himself.

Three hours after the verdict, DeLeo had not yet offered a reaction to it.

Outside the courthouse after the verdicts were announced, Ortiz emphasized the seriousness of public corruption and cautioned that any system of awarding public jobs that is not based on merit can "rapidly devolve" into fraud. She said that in conspiracy cases "you are not trying people in a vacuum," explaining how the case had drawn the names of others, such as DeLeo, into evidence.

In pursuit of the guilty verdict, prosecutors called former officials who had clashed with O'Brien as well as those who respected him, along with judges who saw the hiring process up close. Witnesses were accused of lying by both sides, and defense attorneys claimed former Chief Justice of Administration and Management Robert Mulligan engaged in the same type of patronage when he hired court officers.

In many cases, jurors rejected the defense notion that the recommendations from lawmakers were mere suggestions from respectable and knowledgeable officials, instead embracing the prosecution theory that officials in the key law enforcement agency carefully manipulated hiring, counting

interviews and applications as meaningless while the political heft of a candidate's sponsor carried all the weight.

"Who would really want to send an application into probation with these three at the helm?" prosecutor Robert Fisher asked before the jury began deliberations. He said, "There was no one who got a fair shake unless they had a sponsor."

The hiring of Patrick Lawton, the scion of a prominent Brockton family was deemed fraud, as was the hiring of Kelly Manchester, who was Sen. Mark Montigny's girlfriend when she got a job at a New Bedford family court. Patricia Mosca, who allegedly sought out a probation job for its effect on her pension status, was hired based on a fraudulent process, the jury found. And Melissa Mella — who was hired after Cape and Island District Attorney Michael O'Keefe endorsed her candidacy — was also, hired based on her political backing rather than her qualifications, the jury found. Mosca and Lawton no longer work for probation.












