U.S. Department of Justice
National Institute of Corrections

EXHIBIT 5



# CIVIL LIABILITIES
and Other Legal Issues for Probation/Parole Officers and Supervisors

4th Edition





National Institute of Corrections

**U.S. Department of Justice**
**National Institute of Corrections**
**320 First Street, NW**
**Washington, DC 20534**

**Morris L. Thigpen**
*Director*

**Thomas J. Beauclair**
*Deputy Director*

**George Keiser**
*Chief, Community Corrections Division*

**Dorothy Faust**
*Project Manager*

---

**National Institute of Corrections**
*www.nicic.gov*

---

# CIVIL LIABILITIES

and Other Legal Issues for Probation/Parole Officers and Supervisors

4th Edition



Phillip Lyons
Todd Jermstad

NIC Accession No. 027037

March 2013

This document was developed under cooperative agreement number 08C77G7U3 from the National Institute of Corrections, U.S. Department of Justice. Points of view or opinions in this document are those of the authors and do not necessarily represent the official opinion or policies of the U.S. Department of Justice.

# Contents

Chapter 1. An Overview of State and Federal Legal Liabilities.......................................1

Chapter 2. Civil Liability Under State Law: State Tort Cases......................................13

Chapter 3. Civil Liability Under Federal Law: § 1983 Cases ......................................27

Chapter 4. Legal Representation, Attorneys' Fees, and Indemnification ...................39

Chapter 5. Presentence and Preparole Investigations and Reports ...........................55

Chapter 6. Supervision ............................................................................................81

Chapter 7. Conditions, Modifications, and Changes in Status .................................113

Chapter 8. Revocation ............................................................................................155

Chapter 9. Emerging Trends Concerning Liability of Probation and Parole
            Officers for Supervision .......................................................................185

Chapter 10. Vicarious Liability ...............................................................................203

Chapter 11. Direct Liability for Supervisors............................................................215

Chapter 12. Agency Liability for Acts of Supervisors ..............................................239

Chapter 13. The Nature of Inmates' Rights.............................................................247

Chapter 14. Inmates' Rights at Parole Release Hearings .........................................257

Chapter 15. Liability of Parole Officials for Crimes Committed by
            Released Offenders...............................................................................275

Chapter 16. Immunity for Parole Board Officials.....................................................285

Chapter 17. Questions, Specific Concerns, and General Advice ...............................291

CHAPTER 1

# AN OVERVIEW OF STATE AND FEDERAL LEGAL LIABILITIES

**INTRODUCTION**

**I. UNDER STATE LAW**

    A. Civil Liability Under State Tort Law
      1. State Tort Law
      2. State Civil Rights Laws

    B. Criminal Liability Under State Law
      1. State Penal Code Provisions Aimed Specifically at Public Officers
      2. Regular Penal Code Provisions Punishing Criminal Acts

**II. UNDER FEDERAL LAW**

    A. Civil Liabilities
      1. Title 42 of the U.S. Code, § 1983—Civil Action for Deprivation of Rights
      2. Title 42 of the U.S. Code, § 1985—Conspiracy to Interfere With Civil Rights
      3. Title 42 of the U.S. Code, § 1981—Equal Rights Under the Law

    B. Criminal Liabilities
      1. Title 18 of the U.S. Code, § 242—Deprivation of Rights Under Color of Law
      2. Title 18 of the U.S. Code, § 241—Conspiracy Against Rights
      3. Title 18 of the U.S. Code, § 245—Federally Protected Activities

**III. MAY AN OFFICER BE HELD LIABLE UNDER ALL OF THE ABOVE LAWS?  YES.**

**IV. DIFFERENT RESULTS IF HELD LIABLE**

**V. POSSIBLE DEFENDANTS IN CIVIL LIABILITY CASES**

    A. Government Agency as Defendant
    B. Individual Officers as Defendants
      1. State Officers
      2. Officers of Local Agencies

**VI. KINDS OF DAMAGES AWARDED IN CIVIL LIABILITY CASES**

    A. Actual or Compensatory Damages
    B. Nominal Damages
    C. Punitive or Exemplary Damages

**SUMMARY**

**NOTES**

# INTRODUCTION

The array of legal liabilities to which probation/parole officers may be exposed are many and varied. They include state and federal laws of both civil and criminal varieties. An overview of these liabilities is depicted in Table 1–1.

Note that in addition to these statutory sources of liability, the officer may be subject to administrative disciplinary procedures within the agency that can result in transfer, suspension, demotion, dismissal, or other forms of sanction. Disciplinary procedures are defined by state law or agency policy.

The above legal liabilities apply to all public officers and not just to probation/parole officers. Police officers, jailers, prison officials, juvenile officers, and just about any officer in the criminal justice system may be held liable for any or all of the above provisions based on a single act. For example, assume that a parole officer unjustifiably uses excessive force on a parolee. Conceivably, he or she may be liable under all of the above provisions. He or she may be liable for conspiracy if he or she acted with another to deprive the parolee of his civil rights, as well as for the act itself, which constitutes the deprivation. The same parole officer may be prosecuted criminally and civilly under federal law and then be held criminally and civilly liable under state law for the same act. The double jeopardy defense cannot exempt him or her from multiple liabilities because double jeopardy applies only in criminal (not civil) cases, and only when two criminal prosecutions are made for the same offense by the same jurisdiction. Criminal prosecution under state and then under federal law for the same act is possible and occurs with some frequency. If this occurs, it often indicates that the second prosecuting authority believes that justice was not served in the first prosecution.

All of the above types of liability are discussed briefly in this chapter. As indicated, liability can be classified according to federal or state law.

## Table 1–1. Classification of Legal Liabilities Under State and Federal Law

| | State Law | Federal Law |
|---|---|---|
| **Civil Liabilities** | 1. State tort law<br>2. State civil rights laws | 1. Title 42 of the U.S. Code, § 1983—Civil Action for Deprivation of Rights<br>2. Title 42 of the U.S. Code, § 1985—Conspiracy to Interfere With Civil Rights<br>3. Title 42 of the U.S. Code, § 1981—Equal Rights Under the Law |
| **Criminal Liabilities** | 1. State penal code provisions aimed specifically at public officers<br>2. Regular penal code provisions punishing criminal acts | 1. Title 18 of the U.S. Code, § 242—Deprivation of Rights Under Color of Law<br>2. Title 18 of the U.S. Code, § 241—Conspiracy Against Rights<br>3. Title 18 of the U.S. Code, § 245—Federally Protected Activities |

# I. UNDER STATE LAW

There are two basic types of liability under state law: civil and criminal.

## A. Civil Liability Under State Tort Law

### 1. State Tort Law

This type of liability is more fully discussed in Chapter 2 (State Tort Cases). For purposes of this overview, the following information should suffice.

A tort is defined as "A civil wrong, other than breach of contract, for which a remedy may be obtained, usually in the form of damages; a breach of a duty that the law imposes on persons who stand in a particular relation to one another."[1] Torts may involve a wrongdoing against a person, such as assault, battery, false arrest, false imprisonment, invasion of privacy, libel, slander, wrongful death, and malicious prosecution; or against property, such as arson, conversion, or trespass. A tort may be intentional (acts based on the intent of the actor to cause a certain event or harm) or caused by neg-ligence. Probation/parole officers may therefore be held liable for a tortious act that causes damage to the person or property of another. Note that § 1983 actions, federal cases, are sometimes referred to as "tort cases," but the reference is to federal rather than state torts.

### 2. State Civil Rights Laws

Many states have passed civil rights laws of their own, either replicating the various federal laws that have been enacted or devising new categories of protected rights. For example, the Federal Civil Rights Act of 1964 prohibits discrimination on the basis of race, religion, color, national origin, sex, and pregnancy. These laws are enforceable by the federal government, but they may also be enforceable by the state if they have also been enacted as state statutes. The penalty or punishment imposed through such state statutes, therefore, is at the state level.

## B. Criminal Liability Under State Law

### 1. State Penal Code Provisions Aimed Specifically at Public Officers

State criminal liability can come under a provision of the state penal code specifically designed for public officers. For example, § 39.03 of the Texas Penal Code contains a provision on "Official Op-pression" that states that a public servant acting under color of his office or employment commits an offense if he:

a. Intentionally subjects another to mistreatment or to arrest, detention, search, seizure, disposses-sion, assessment, or lien that he knows is unlawful; b. intentionally denies or impedes another in the exercise or enjoyment of any right, privilege, power, or immunity, knowing his conduct is unlawful; or c. intentionally subjects another to sexual harassment.[2]

A questionnaire sent to state attorneys general and probation/parole agency legal counsel asked if their states had statutes providing for criminal liability for probation, parole, and public officers in gen-eral. The results show that only a few states have statutes pertaining to liability for probation/parole officers specifically, 8 percent in both cases, but 84 percent of the states have statutes concerning the criminal liability of public officers in general.

### 2. Regular Penal Code Provisions Punishing Criminal Acts

In addition to specific provisions aimed only at public officials, probation/parole officers may also be liable like any other person under the provisions of the state criminal laws. The state criminal codes, for example, impose criminal liability on anyone who commits murder, manslaughter, assault, and so forth as against any other person.

# II. UNDER FEDERAL LAW

## A. Civil Liabilities

### 1. Title 42 of the U.S. Code, § 1983—Civil Action for Deprivation of Rights

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.[3]

This section is discussed separately in Chapter 3 because of the overwhelming number of civil liability cases filed under this section. Refer to that chapter for an exhaustive discussion of liability under federal law.

### 2. Title 42 of the U.S. Code, § 1985—Conspiracy to Interfere With Civil Rights

Section 1985(3) provides a civil remedy against any two or more persons who "conspire ... for the purpose of depriving ... any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws...."[4]

Passed by Congress in 1861, this law provides for civil damages to be awarded to any individual who can show that two or more persons conspired to deprive her of her civil rights. Note that a probation/parole officer may therefore be held civilly liable not only for actually depriving a person of her civil rights (under § 1983), but also for *conspiring* to deprive that person of his civil rights (under § 1985). The two acts are separate and distinct and therefore may be punished separately. Under this section, it must be shown that the officers had a meeting of the minds and actually agreed to commit the act, although no exact statement of a common goal need be proven. In most cases, the act is felonious in its severity (as opposed to a misdemeanor) and is aimed at depriving the plaintiff of her civil rights. The plaintiff must also be able to prove that the defendants purposely intended to deprive her of equal protection of the law. This section, however, is seldom used against public officers because the act of conspiracy is often difficult to prove except through the testimony of coconspirators. Moreover, it is limited to situations in which the objective of the conspiracy is invidious discrimination, which is difficult to prove in court. It is difficult for a plaintiff to establish in a trial that the probation/parole officer's action was discriminatory based on sex, race, or national origin.

### 3. Title 42 of the U.S. Code, § 1981—Equal Rights Under the Law

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

***

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship.

•••

The rights protected by this section are protected against impairment by nongovernmental discrimi-nation and impairment under color of State law.[5]

This section was passed in 1870, a year earlier than § 1983. Originally, the plaintiff had to show that he was discriminated against because of his race, thus limiting the number of potential plaintiffs.

Section 1981 has been widely used in employment and housing discrimination cases (under its con-tracts and equal benefits provisions). However, the like punishments provision should be of greater significance for probation and parole authorities because criminal justice system officials have been held liable for violating its mandate.[6]

## B. Criminal Liabilities

### 1. Title 18 of the U.S. Code, § 242— Deprivation of Rights Under Color of Law

Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person of any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties on account of such person being an alien, or by reason of his color, or race than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both; and if bodily injury results from the acts committed in violation of this section or if such acts include the use, attempted use, or threatened use of a danger-ous weapon, explosives, or fire, shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse, or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death.[7]

This section provides for criminal action against any officer who actually deprives another of his civil rights. An essential element of this section requires the government to show that the officer, acting "under color of any law," did actually commit an act that amounted to the deprivation of one's civil rights. Essential elements of § 242 are the following: (a) the defendant must have been acting under color of law; (b) a deprivation of any right secured by the United States Constitution or federal laws; and (c) specific intent on the part of the defendant to deprive the victim of rights.

### 2. Title 18 of the U.S. Code, § 241— Conspiracy Against Rights

If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having exercised the same; or

If two or more persons go in disguise on the highway, or on the premises of another, with the intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured—They shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse or an attempt to commit aggravated sexual abuse, or an attempt to kill, they shall be fined under this title or imprisoned for any term of years or for life, or both, or may be sentenced to death.[8]

The courts have interpreted this section as requiring the following: (1) the existence of a conspiracy whose purpose is to injure, oppress, threaten, or intimidate; (2) one or more of the intended victims must be a United States citizen; and (3) the conspiracy must be directed at the free exercise or

enjoyment by such a citizen of any right or privilege under federal laws or the United States Constitution.

The main distinction between § 242 and § 241 is that § 242 punishes the act of depriving one of rights, whereas § 241 punishes the conspiracy to so deprive one of rights. Inasmuch as conspiracy, by definition, requires at least two participants, § 241 cannot be committed by a person acting alone. Moreover, although § 242 requires the officer to be acting the "color of any law," there is no such requirement under § 241; hence, a private person can commit a § 241 violation.

### 3. Title 18 of the U.S. Code, § 245— Federally Protected Activities

This section applies to all individuals and, therefore, applies to public officers who forcibly interfere with such federally protected activities as:

- Voting or running for an elective office.

- Participating in government-administered programs.

- Applying for or enjoying the benefits of federal employment.

- Serving as juror in a federal court.

- Participating in any program receiving federal financial assistance.[9]

Violations of § 245 carry a fine or imprisonment of not more than 1 year, or both. Should bodily injury result from a violation, or if such acts include the use, attempted use, or threatened use of a dangerous weapon, explosive, or fire, the violator may be fined or imprisoned not more than 10 years, or both. Should death result from the acts committed in violation of this section, or if such acts include kidnapping, attempt to kidnap, aggravated sexual abuse or an attempt to commit aggravated sexual abuse, or an attempt to kill, the violator may be fined under this title or imprisoned for any term of years or for life, or both, or may be sentenced to death.[10] This statute, passed in 1968, seeks to punish all persons who forcibly interfere with federally protected activities. Therefore, it applies to probation/parole officers who act in their private capacity. The first part of the law penalizes a variety of acts as noted above. The act goes on to authorize punishment for deprivations of such rights as attending a public school or college; participating in state or locally sponsored programs; serving on a state jury; participating in interstate travel; or using accommodations serving the public, such as eating places, gas stations, and motels. Finally, the act penalizes interference of persons who encourage or give an opportunity for others to participate in or enjoy the rights enumerated in the statute. It is distinguished from sections 241 and 242 in that a person acting singly and in a private capacity can violate it. This law is seldom used at present.

## III. MAY AN OFFICER BE HELD LIABLE UNDER ALL OF THE ABOVE LAWS? YES.

The entire array of laws outlined above may apply to a probation/parole officer based on a single act if the required elements for liability are present. For example, an act of an officer that leads to the wrongful death of an offender may subject the officer to liability under state and federal laws. Under each, the officer may be held liable civilly, criminally. Moreover, the officer can be punished by his agency through administrative sanctions.

The defense of double jeopardy does not apply in these cases because that defense is available only if there are successive prosecutions for the same offense by the same jurisdiction.[11] Civil and criminal penalties imposed by the same government may result from a single act because "successive prosecution" means that both cases are criminal; hence, it does not apply if one case is criminal

and the other civil. Criminal prosecutions may also take place in state court and federal court for the same act. There is no double jeopardy because of the "same jurisdiction" requirement for the defense. State and federal prosecutions take place in different jurisdictions; therefore, there is no double jeopardy. There is also no double jeopardy protection if an employee is dismissed from employment or otherwise disciplined by her agency and then either prosecuted, or held civilly liable, for the same act. This is so because agency discipline, like a civil action, is not a criminal proceeding.

The series of events involving the defendant police officers in the infamous Rodney King case provides an example of how double jeopardy protection applies and, importantly, how it does not. In that case, the officers were first suspended and then dismissed from employment by the agency (administrative liability). They were then tried for criminal acts in state court, but were acquitted. After acquittal, they were tried again for criminal acts in federal court. Two of the four defendants were acquitted in federal court, but the other two were convicted and served time in a federal institution. The officers raised the double jeopardy defense on appeal, but did not prevail because they were tried by two different jurisdictions. The officers were also held liable for civil damages.

# IV. DIFFERENT RESULTS IF HELD LIABLE

Civil liability results in payment of money by the defendant to the plaintiff for damages caused. In civil liability cases, therefore, the plaintiff seeks money. In § 1983 cases, the plaintiff may also seek changes in agency policy or practice in addition to monetary compensation. Sanctions imposed in criminal cases include time in jail or prison, probation, fine, restitution, or other sanctions authorized by law and imposed by the judge. Administrative sanctions include dismissal, demotion, transfer, reprimand, warning, or other sanctions that are authorized by agency policy or state law.

# V. POSSIBLE DEFENDANTS IN CIVIL LIABILITY CASES

Using the "deep pockets" approach (plaintiffs usually include as defendants those who are best positioned to satisfy a monetary judgment against them), plaintiffs generally include as defendants anybody who might possibly have anything to do with a case. This might include the probation/parole officer, the supervisors, and the governmental agency that is the employer of the alleged offending officer. The assumption is that probation/parole officers have shallow pockets, whereas supervisors and agencies have deep pockets. Resolving the question of who is responsible for what amounts is usually determined by state law (See Chapter 4 on Indemnification).

## A. Government Agency as Defendant

In lawsuits against the agency, immunity usually attaches if the defendant is a state agency. This is because states (and the federal government) enjoy sovereign immunity, a doctrine stemming from the common law concept that "the King can do no wrong," hence cannot be sued or held liable. Sovereign immunity, however, may be waived through law or judicial decision, and many jurisdictions have waived it. Congress, for example, has waived most of the federal government's sovereign immunity. Where sovereign immunity does exist in a state, the question arises as to whether the particular function involved was governmental (for which there is immunity) or proprietary (for which there is no immunity). This is a complex area of law and decisions vary from state to state.

The rule concerning local governments is different. Local governments are subject to liability under the United States Supreme Court's decision in *Monell* v. *Department of Social Services*.[12] In the 1978 Monell decision, the Court stripped local agencies of the sovereign immunity defense.

Therefore, counties, judicial districts, municipalities, or other political subdivisions may be sued and held liable for what their employees do.

## B. Individual Officers as Defendants

### 1. State Officers

Although state agencies are generally exempt from liability for their governmental activities unless sovereign immunity is waived, immunity ordinarily is unavailable to individual state officers who are sued. Therefore, members of state probation/parole boards may be sued as individuals. The fact that a state provides counsel, or indemnifies the officer if held liable, does not mean that the state has consented to be sued. It simply means that, if held liable, the officer pays the damages and the state indemnifies or reimburses him. All officers, state or local, may therefore be sued in their individual capacity under § 1983.

### 2. Officers of Local Agencies

Officers of counties, judicial districts, municipalities, or other political subdivisions may be sued in their official or individual capacities. As in the case of state officers, however, plaintiffs will likely sue officers in their official capacities so they can include their supervisors and agencies as defendants.

# VI. KINDS OF DAMAGES AWARDED IN CIVIL LIABILITY CASES

In general, three kinds of damages may be awarded in civil liability cases, particularly to those who file under state tort law:

## A. Actual or Compensatory Damages

These damages reduce to monetary terms all actual injuries shown by the plaintiff. Consequential damages, such as medical bills and lost wages, are termed "special damages" and are included in the category of compensatory damages.

## B. Nominal Damages

These are an acknowledgment by the court that the plaintiff proved his cause of action, usually in the amount of $1. When the plaintiff was wronged but suffered no actual injury, nominal damages would be appropriate.

In one case, *Brooker v. N.Y.,* for example, a plaintiff who was arrested by state police officers, was grabbed by the neck and pulled out of a tavern. In a claim alleging assault and battery, the court awarded $1 in nominal damages, finding that the plaintiff suffered "no injury" from the use of force and made "embarrassingly phony" moans of pain only when someone started to videotape the events.[13] Courts, have held that a nominal damage award must be entered where a constitutional violation has been found, even if no actual damages resulted.[14]

Where nominal damages vindicate the plaintiff as wronged, the door to punitive damages is opened, with or without a compensatory damage award. Nominal damages also lay the basis for awarding 1983 attorney fees in that they identify the prevailing party. These fees are not automatic in cases involving nominal damages, however; the Supreme Court has held that courts must take into account the amount of the award and other relief granted in deciding whether to award attorney's fees and in what amounts.[15]

## C. Punitive or Exemplary Damages

These damages are designed to punish or make an example of the wrongdoer, as well as to deter future transgressions. Punitive damages awarded can be quite high. In one case, the U.S. Supreme Court held that a $10 million punitive damage award did not violate due process requirements of the 14th amendment. In making its decision, the Supreme Court noted that the absolute or relative size of a punitive award was not the test of excessiveness but, rather, whether an award reflects bias, passion, or prejudice by the jury.[16] Punitive damages are awarded only against willful transgressors. However, the Supreme Court has ruled that no punitive damages may be awarded against local governments.[17]

# SUMMARY

Probation/parole officers may be exposed to legal liabilities under federal and state law. Legal liabilities may be classified as civil, criminal and administrative. This chapter discusses the various laws and consequences to which an officer may be exposed in connection with her work. These liabilities are not mutually exclusive; in fact, one serious act may expose the officer to a number of civil and criminal liabilities under both federal and state law. In addition, the officer may be subject to administrative disciplinary proceedings that can result in transfer, suspension, demotion, dismissal, or other forms of sanction.

The constitutional protection against double jeopardy does not necessarily preclude liability under all of these sources of law simultaneously because the cases (a) may not all be criminal, (b) may not relate to the same criminal act, or (c) may not be prosecuted by the same jurisdiction. Double jeopardy protection applies only where criminal prosecutions for the same offense are undertaken by the same jurisdiction.

In addition to the probation/parole officer, a plaintiff using the "deep pockets" approach, may include as defendants anybody who had anything to do with the case. This could include supervisors as well as the government agency employing the probation/parole officer. However, a state or federal agency normally will enjoy sovereign immunity unless waived through law or judicial decision. If sovereign immunity does exist in a state, it then becomes important to determine whether the particular function involved was governmental (for which there is official immunity).

Local governments, such as counties, judicial districts, municipalities, or other political subdivisions may be sued and held liable for the actions of their employees under the U.S. Supreme Court's decision in Monell v. Department of Social Services.

In civil liability cases, there are essentially three kinds of damages that may be awarded. These include actual or compensatory damages in the form of a monetary amount for actual injuries shown by the plaintiff. A second type of damage award is nominal damages. Here the court acknowledges that the plaintiff has proved her cause of action, but no actual injury was sustained. In this case, a nominal amount of, say, $1 might be awarded. A third type of damages awarded in civil cases is punitive or exemplary damages. These damages are awarded to punish or make an example of the wrongdoer as well as to deter transgressions by others in the future.

# NOTES

1. Black's Law Dictionary, ninth edition (2009).

2. Tex. Pen. Code, § 39.03 (2003).

3. 42 U.S.Code, § 1983 (2006).

4. 42 U.S. Code, § 1985 (2006).

5. 42 U.S. Code, § 1981 (2006).

6. E.g., *Giron* v. *City of Alexander,* 693 F.Supp.2d 904 (E.D. Ark. 2010).

7. 18 U.S. Code § 242 (2006).

8. 18 U.S. Code § 241 (2006).

9. 18 U.S. Code § 245 (2006).

10. Id.

11. 21 Am. Jur. 2d Criminal Law § 275 (Westlaw, July 2010).

12. *Monell* v. *Department of Social Services,* 436 U.S. 658 (1978).

13. *Brooker* v. *New York,* 614 N.Y.S.2d 640 (A.D. 1994).

14. *Floyd* v. *Laws,* 929 F.2d 1390 (9th Cir. 1991).

15. *Farrar* v. *Hobby,* 506 U.S. 103 (1992).

16. *TXO Production Corp.* v. *Alliance Resources Corp.,* 509 U.S. 443 (1993).

17. *City of Newport* v. *Fact Concerts, Inc.,* 453 U.S. 247 (1981).

# III. DEFENSES IN STATE TORT CASES

Many defenses are available in state tort cases, including consent, self-defense, defense of others, and defense of property. Nearly every type of tort case has its own particular defense. For example, the defenses for the torts of assault and battery differ from the defense against the tort of defamation; the defenses for intentional torts differ generally from the defenses for the negligence tort. These defenses vary somewhat from jurisdiction to jurisdiction and private persons who are alleged to have engaged in tortious conduct are encouraged to consult the laws of their own jurisdiction to find out applicable defenses and their elements.

The types of defenses discussed here are those that are applicable to government officials or entities, not to private persons. These include the official immunity defense (applies to government officials), the governmental immunity defense (applies to governmental agencies), and the public duty doctrine defense (applies to public officials in injury cases as a result of alleged supervision negligence).

## A. Immunity for Officials

Government officials enjoy immunity from being sued and held liable when they are being sued in their individual capacities. The United States Supreme Court has articulated the justification for this immunity thusly:

> It has been thought important that officials of government should be free to exercise their duties unembarrassed by the fear of damage suits in respect of acts done in the course of those duties-suits which would consume time and energies which would otherwise be devoted to governmental service and the threat of which might appreciably inhibit the fearless, vigorous, and effective administration of policies of government.[24]

### 1. Categories of Immunity Available to Officials

The immunity available to officials may be divided into three categories: absolute, quasi-judicial, and qualified. Each is briefly discussed below.

a. Absolute immunity is premised on the idea that the public interest is best served if government officials are free to discharge their official duties without the distraction of being haled into court time and time again. This privilege "defeats a suit at the outset" by protecting the official from even being subjected to trial.[25] The privilege applies to prosecutors, legislators, and judges who are performing judicial duties within their own jurisdictions.[26] The Supreme Court summarized the elements of this kind of immunity in the classic case on this point as follows, "absolute immunity from state-law tort actions should be available only when the conduct...is within the scope of their official duties *and* the conduct is discretionary in nature."[27] The discretionary criterion is included because, "[w]hen an official's conduct is not the product of independent judgment, the threat of liability cannot detrimentally inhibit that conduct.[28] Unlike qualified immunity, discussed below, good faith is not required in order for an official to avail herself of the absolute immunity privilege.[29]

It must be noted that judges do not enjoy absolute immunity in everything they do. They have absolute immunity only when performing judicial or adjudicatory responsibilities, such as issuing setting conditions of probation or revoking probation. They do not have absolute immunity when performing nonjudicial functions, such as when serving as a member of a juvenile probation board or when hiring or firing probation officers.

b. Quasi-judicial immunity. Absolute immunity is generally applied to officials in the judicial and legislative branches of government who are undertaking their official policymaking functions, whereas

qualified immunity (see below) applies to those in the executive branch. Some officials, however, have both judicial and executive functions. Such officials include court personnel, parole board members, and some probation officers. These officials are given some protection, referred to in some jurisdictions as "quasi-judicial immunity." "Absolute quasi-judicial immunity is extended to nonjudicial officers if they perform official duties that are functionally comparable to those of judges, that is, duties that involve the exercise of discretion in resolving disputes."[30] Under this type of immunity, judicial-type functions that involve discretionary decision making or court functions are immune from liability, whereas some other functions (such as ministerial duties of the job) are not. The emphasis is on the function performed rather than on the position the officer holds.[31]

c. Qualified immunity.[32] As noted above, absolute immunity attaches to prosecutors, legislators, and judges for their policy-making (i.e., discretionary) official acts (i.e., within the scope of their employment). Absolute and quasi-judicial immunity were creatures of the common law that were not available to every public official. As the Supreme Court observed in 1967, "The common law has never granted police officers an absolute and unqualified immunity, and the officers in this case do not claim that they are entitled to one. Their claim is rather that they should not be liable if they acted in good faith."[33] This good faith requirement has become the qualifier in qualified immunity.

One state court, for example, lists the requirements that must be present in many states for the defense to succeed, holding that government employees are entitled to official immunity from lawsuits arising from the performance of their "discretionary duties, in good faith, as long as they are acting within the scope of their authority."[34] Applied to probation and parole officers, this means that, in order to prevail on an official immunity claim, the officer will have to prove that: (1) she was performing a discretionary, not a mandatory, act; (2) she acted within the scope of her authority; and, perhaps, (3) she acted in good faith (if the state immunity defense requires it). What do these terms mean?

- Discretionary means that the act involves personal deliberation, decision, and judgment. Actions that require obedience to orders or performance of duty to which the officer has no choice are not discretionary; they are, instead, ministerial.[35] Probation and parole officers should consider which of their actions are discretionary (e.g., motions to revoke probation?) for which official immunity might apply, and which actions are ministerial (e.g., supervising those probationers or parolees to whom the officer is assigned).

- The "scope of authority" criterion has been defined as follows: "[A] public official or employee is acting within the scope of his or her authority if he or she is discharging the duties generally assigned to him or her even if they are performed wrongly or negligently."[36] Example: A probation officer making a home contact is acting within the scope of his authority. By contrast, a probation officer who decides to remove an infant from a probationer's home in order to protect the infant is clearly acting outside the scope of his authority.

- "An officer acts in good faith and is entitled to official immunity from liability if a reasonably prudent officer, under the same or similar circumstances, could have believed that his acts were justified."[37] Good faith has been described somewhat more recently in the context of police pursuits as applying where: a reasonably prudent officer might have believed that the pursuit should have been continued. The officer need not prove that it would have been unreasonable to stop the pursuit or that all reasonably prudent officers would have continued the pursuit. Immunity should be recognized if officers of reasonable competence could disagree on this issue."[38]

It is worth noting that the protection afforded by the privilege is quite substantial. As the U.S. Supreme Court acknowledged in the case of *Malley* v. *Briggs*, "As the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law."[39]

## 2. What Type of Immunity Do Probation/Parole Officers Have?

Immunity for probation/parole officers is often dependent on the agencies for which they work and the nature of the functions performed, but in general they have qualified immunity. Probation officers who are employees of the court and work under court supervision do not enjoy the same absolute immunity of judges, but they may be vested with judicial immunity for some acts. For example, the Fifth Circuit Court of Appeals held that a federal probation officer was entitled to judicial immunity when preparing and submitting a presentence report in a criminal case and was not subject to liability for monetary damages.[40] Other cases, both before[41] and since[42] have reached the same conclusion relative to state probation officers.

Many of the actions of such court-supervised probation officers, however, are considered executive, and hence are likely to come under qualified immunity. Distinguishing those functions for which absolute immunity attaches from those entitled only to qualified immunity, the Tenth Circuit Court of Appeals held "[t]he more distant a function is from the judicial process, the less likely absolute immunity will attach."[43] Probation officers without absolute immunity protection, who enjoy qualified immunity instead, may be held liable unless the act is discretionary, within the scope of their employment, and undertaken in good faith. Parole officers are usually employees of the executive department of the state and, as such, they enjoy only qualified immunity. They do not enjoy any type of judicial immunity that some courts say probation officers have when performing certain court-ordered functions.

Most federal courts of appeals have ruled that higher officials of the executive branch who must make judgelike decisions are performing a judicial function that deserves absolute immunity. This particularly refers to parole boards when performing such functions as considering applications for parole, recommending that a parole date be rescinded, or conducting a parole revocation hearing.[44] One federal appellate court, however, has stated that probation and parole board members and officers enjoy absolute immunity when engaged in adjudicatory duties but only qualified, good faith immunity for administrative acts. The same court categorized the failure to provide procedural due process in a revocation hearing as ministerial in nature, for which liability attached.[45]

## B. Governmental Immunity

The doctrine of sovereign immunity from suit was originally based on the monarchical, semireligious tenet that "the King can do no wrong." In modern times, it is more often explained as a rule of social policy, which protects the state from burdensome interference with the performance of its governmental functions and preserves its control over state funds, property, and instrumentalities. The public service might be hindered and the public safety endangered if the supreme authority could be subjected to suit at the instance of every citizen, and consequently controlled in the use and disposition of the means required for the proper administration of the government. [footnotes omitted][46]

Neither the federal government nor any state fully retains its sovereign immunity. Legislatures in every jurisdiction have been under pressure to compensate victims of governmental wrongs, and all have adopted some form of legislation waiving immunity in at least some areas of governmental activity. As noted by one scholar:

> The urgent fiscal necessities that made the governmental immunity acceptable at the outset are no longer present. The United States and a growing number of states have found it financially feasible for them to accept liability for and consent to suit upon claims of negligence and omission, for which they traditionally bore no liability at all; the availability of public liability insurance as well as self-insurance makes the assumption of this wholly new liability quite tolerable.[47]

No state, however, has gone so far as to totally relinquish immunity for all injuries caused through the misadministration of the governmental process.

State immunity, subject to waiver by legislation or judicial decree, operates to protect the states and their agencies. A distinction must be made, however, between agency liability and individual liability. Sovereign or governmental immunity only extends to state agencies. It does not extend to individual state officers who can be sued and held personally liable for civil rights violations or tortious acts. Therefore, in states where sovereign immunity has not been waived, state officials may still be sued and held liable because they do not enjoy governmental immunity. For example, a state cannot be sued (unless sovereign immunity is waived), but the chairman and members of the State Parole Board can be sued and held liable. Whether the state will provide legal representation and indemnification, if held liable, varies from state to state.

Prior to 1978, municipal governments, counties, and villages could not be sued because they were considered extensions of state power and hence enjoyed sovereign immunity. All that changed in 1978 when the United States Supreme Court held in Monell v. Department of Social Services[48] that local units of government may be held liable, in a § 1983 action if the allegedly unconstitutional action was part of a policy or custom.

As is evident from the above discussion, the immunity defense is complex, confusing, and far from settled, particularly in the case of probation and parole officers. Variations exist from state to state and between the state and federal governments. The foregoing discussion is intended merely to provide a general guide and a description of the legal framework. Similarly, Table 2–1 summarizes what courts in most jurisdictions have held. It is not intended to serve as a definitive statement on the issue of immunity. Interested readers should consult their legal advisors for the law and court decisions in their states.

## Table 2–1. General Guide to Types of Official Immunity in State Tort Lawsuits

| | Absolute* | Quasi-judicial† | Qualified§ |
|---|---|---|---|
| Judges | Yes | | |
| Legislators | Yes | | |
| Prosecutors | Yes | | |
| Parole Board Members | | Yes, if performing a judgelike function | Yes, if performing other functions |
| Supervisors | | | Yes |
| Probation Officers | | Yes, if preparing a presentence report under order of judge | Yes, if performing other functions |
| Parole Officers | | | Yes |
| Prison Guards | | | Yes |
| Police Officers | | | Yes |
| State Agencies | Yes, unless waived by law or court decision | | |
| Local Agencies | No immunity | No immunity | No immunity |

\* Absolute immunity means that a civil liability suit, if brought, is dismissed by the court without going into the merits of the plaintiff's claim. No liability.

† Quasi-judicial immunity means that officers are immune if they are performing judicial-type functions, such as when preparing a presentence report under orders of the judge, and liable if they are performing other functions.

§ Qualified immunity means that the officer's act is immune from liability if it is discretionary, but not if it is ministerial. Also, an officer may not be liable even if the act is ministerial if it was done in good faith.

## C. The Public Duty Doctrine Defense in Injury Cases Resulting From Negligent Supervision

As a general matter, there is no liability on the part of probation and parole officers for failing to protect a member of the public. This protection from liability stems from the "public duty doctrine," which holds that government functions are owed to the general public but not to specific individuals.[49] Therefore, probation/parole officers who fail to prevent an injury to a member of the public are not liable for the injury inflicted. One of the goals of probation and parole is public protection. Injured members of the public file lawsuits against probation and parole officers and departments because they relate the injury caused by probationers or parolees to inadequate supervision or failure to revoke probation or parole. The public assumes that, had the offender been properly supervised and had the probation or parole been revoked upon violation of conditions, the injury could have been prevented.

Logical as this thinking may be, it generally has no basis in law. The reality is that, were it not for the protection against civil liability given by the public duty doctrine, nobody would ever want to be a police, probation, or parole officer. These are high-risk occupations that promote public protection as a part of their mission, yet they hardly have any control over what the public or their supervisees do vis-à-vis the public; therefore, they are protected against civil liability.

The Exception: Liability May Be Imposed If a Special Relationship Exists

There is one major, multifaceted, and largely undefined exception to the public duty doctrine, namely, the special relationship exception. The exception essentially holds that liability may attach despite the public duty doctrine if a special relationship exists between the government and the individual who suffers harm.[50] The application of the exception in the context of probation and parole means that if a duty is owed to a particular person rather than to the general public, then a probation or parole officer or agency that breaches that duty can be held liable for damages. Special relationship has many meanings depending on state law, court decisions, or agency regulations.

The cases involving exceptions to the public duty doctrine have generally involved law enforcement officers and have established liability on the basis of special relationships in the following circumstances: (a) such a duty arises from a statute, (b) the government creates the danger (as opposed merely to failing to prevent it), (c) the government voluntarily undertakes special protection of the individual victim, (d) the government or its officers made a statement or promise to persuade the victim to rely on the government for protection, or (e) the government officers exacerbated an existing risk of harm to the victim.[51]

- When the police deprive an individual of liberty by taking him or her into custody.[52]

- When the police assume an obligation that goes beyond police duty to protect the general public.[53]

- When protection is mandated by law.[54]

- When protection is ordered by the court.[55]

What the above situations have in common is that, in each circumstance, the duty of the police has shifted from that of protecting the public in general to protecting a particular person or persons; hence a special relationship is deemed to have been established.

There are instances when the special relationship exception might apply to probation or parole officers. This is particularly likely when they are vested with law enforcement authority, as they are in some jurisdictions.

The public duty doctrine and the special relationship exception are discussed more fully in Chapter 8, Supervision.

# SUMMARY

Probation and parole officers may be held liable under state tort law. There are two kinds of state torts that should be of particular relevance to probation and parole officers, namely, intentional torts and negligence torts. Intentional tort has two subcategories: physical tort and nonphysical tort. Negligence tort has assumed greater importance for probation/parole officers because of the increasing number of cases filed by the public. This happens when a member of the public is injured by a probationer or parolee and the plaintiff believes the injury could have been prevented had the officer properly supervised the probationer or parolee. Intentional tort is a tort of commission, whereas negligence tort is generally a tort of omission, meaning the officer failed to do something that ought to have been done.

Two types of immunity and one defense are discussed in this chapter: the immunities available to officials; the immunity available to the government; and the public duty doctrine defense. The immunity available to officials may be divided into three categories: absolute, quasi-judicial, and qualified. Judges and prosecutors enjoy absolute immunity while performing their judicial responsibilities, whereas probation and parole officers have qualified immunity. Governmental immunity means that the government cannot be sued because of its status as sovereign, unless such sovereign immunity is waived by legislation or case law. Local agencies, however, do not enjoy sovereign immunity; hence, they can be sued and held liable. The public duty doctrine holds that government functions are owed to the general public but not to specific individuals. Therefore, probation and parole officers who fail to prevent an injury to a member of the public are not liable unless it falls under the special relationship exception. Special relationship, however, is an ill-defined concept and tends to be applied on a case-by-case basis.

# NOTES

1. Black's Law Dictionary, ninth edition (2009).

2. Black's Law Dictionary, ninth edition (2009).

3. Restatement Second, Torts § 13.

4. Restatement Second, Torts § 19.

5. Restatement Second, Torts § 21(1).

6. Restatement Second, Torts § 46; Restatement Third, Torts: Liability for Physical and Emotional Harm § 45.

7. *West Virginia Fire and Casualty Co.* v. *Stanley,* 602 S.E.2d 483 (2004).

8. *City of St. Petersburg* v. *Austrino,* 898 So. 2d 955 (Fla. Dist. Ct. App. 2d Dist. 2005); *Smith* v. *Knight,* 907 So. 2d 831 (La. Ct. App. 2d Cir. 2005); *Peterson Novelties, Inc.* v. *City of Berkley,* 259 Mich. App. 1, 672 N.W.2d 351 (2003); *Jacobs* v. *Bonser,* 46 S.W.3d 41 (Mo. Ct. App. E.D. 2001); *Williams* v. *City of Jacksonville Police Dept.,* 165 N.C. App. 587, 599 S.E.2d 422 (2004).

9. 22A Am.Jur.2d Death § 19 (Westlaw, July 2010).

10. *Taus* v. *Loftus,* 151 P.3d 1185 (Cal. 2007).

11. 50 Am.Jur.2d Libel and Slander § 1 (Westlaw, July 2010).

12. 50 Am.Jur.2d Libel and Slander § 472 (Westlaw, July 2010).

13. 62A Am.Jur.2d Privacy § 29 (Westlaw, July 2010).

14. Restatement Second, Torts § 652A(1).

15. 37 Am.Jur.2d Fraud and Deceit § 56.

16. *P.G. v. State, Dept. of Health and Human Services, Div. of Family and Youth Services,* 4 P.3d 326 (Alaska 2000).

17. 1 Am.Jur.2d Abuse of Process § 3 (Westlaw, July 2010).

18. *Deal v. Bowman,* 188 P.3d 941 (Kan. 2008).

19. *Metcalf v. County of San Joaquin,* 43 Cal.Rptr.3d 522, 533 (Cal. App. 3 Dist.,2006).

20. 57A Am.Jur.2d Negligence § 9 (Westlaw, July 2010).

21. 57A Am.Jur.2d Negligence § 5 (Westlaw, July 2010).

22. 57A Am.Jur.2d Negligence § 231 (Westlaw, July 2010).

23. 57A Am.Jur.2d Negligence § 231 (Westlaw, July 2010).

24. *Barr v. Matteo,* 360 U.S. 564, 571 (1959).

25. 63C Am.Jur.2d Public Officers and Employees § 307 (Westlaw, July 2010).

26. 63C Am.Jur.2d Public Officers and Employees § 307 (Westlaw, July 2010).

27. *Westfall v. Erwin,* 484 U.S. 292, 297-298 (1988).

28. *Westfall v. Erwin,* 484 U.S. 292, 296-297 (1988).

29. *Minch v. D.C.,* 952 A.2d 929 (D.C. 2008); *Smith v. Stafford,* 189 P.3d 1065 (Alaska 2008).

30. 63C Am. Jur. 2d Public Officers and Employees § 309 (Westlaw, July 2010).

31. 63C Am. Jur. 2d Public Officers and Employees § 307 (Westlaw, July 2010).

32. Because this form of immunity has evolved over time and across multiple jurisdictions, it is now always known by the name "qualified immunity." For example, "Texas law of official immunity is substantially the same as federal qualified immunity law." (*Wren v. Towe,* 130 F.3d 1154, 1160 (5th Cir. 1997); see also, e.g., *Haggerty v. Texas Southern University* 391 F.3d 653 (5th Circuit 2004); *Murray v. Earle,* 405 F.3d 275 (5th Circuit 2005).

33. *Pierson v. Ray,* 386 U.S. 547, 555 (1967).

34. *City of Lancaster v. Chambers,* 883 S.W.2d 650 (Texas 1994); see also, e.g., *Murphy v. Bajjani,* 647 S.E.2d 54 (Ga. 2007); *Ross v. Consumers Power Co.,* 363 N.W.2d 641 (Mich. 1984).

35. *City of Pharr v. Ruiz,* 944 S.W.2d 709 (Tex. Cr. App. Corpus Christi, 1997); see also, e.g., *Barnard v. Turner County,* 2010 Westlaw 3749087, __ S.E.2d __ (Ga.App. 2010). "A discretionary act calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed."

36. *Ballantyne v. Champion Builders, Inc.,* 144 S.W.3d 417 (Tex. 2004).

37. *Moore v. Novark,* 1995 Westlaw 571854 (Tex. Ct. App.-Houston 1995).

38. *City of Pharr v. Ruiz,* 944 S.W.2d 709, 715 (Tex. Ct. App.-Corpus Christi 1997); see also, *Loftin v. Morales,* 187 S.W.3d 533 (Tex. Ct. App.-Tyler 2005).

39. *Malley* v. *Briggs,* 475 U.S. 335, 341 (1986).

40. *Spaulding* v. *Nielsen,* 599 F.2d 728 (5th Cir. 1979).

41. *Burkes* v. *Callion,* 433 F.2d 318 (9th Cir. 1970), cert. denied, 403 U.S. 908 (1970).

42. *Parris* v. *Quattlebaun,* 2009 Westlaw 734146 (M.D. Ala. 2009).

43. *Snell* v. *Tunnell,* 920 F.2d 673, 687 (10th Cir.1990).

44. *Keeton* v. *Procunier,* 468 F.2d 810 (9th Cir. 1972).

45. *Thompson* v. *Burke,* 556 F.2d 231 (3d Cir. 1977); see also, *Moriarty* v. *Rendel,* 2009 Westlaw 1458201 (M.D. PA 2009).

46. 72 Am. Jur. 2d States, Territories, and Dependencies § 97 (Westlaw, July 2010).

47. D. Engdahl, Immunity and Accountability for Positive Governmental Wrongs, 44 U. Colo. L. Rev. 1, at 60 (1972).

48. *Monell* v. *Department of Social Services,* 436 U.S. 658 (1978).

49. 57 Am. Jur. 2d Municipal, County, School, and State Tort Liability § 88 (Westlaw, July 2010).

50. 57 Am. Jur. 2d Municipal, County, School, and State Tort Liability § 84 (Westlaw, July 2010).

51. 57 Am. Jur. 2d Municipal, County, School, and State Tort Liability § 175 (Westlaw, July 2010).

52. CJS Municipal Corporations § 492, Duties (2010).

53. See *Schuster* v. *City of New York,* 154 N.E.2d 534 (N.Y. 1958).

54. Restatement Third, Torts: Liability for Physical and Emotional Harm § 38 (2005).

55. Police Misconduct: Law and Litigation § 2:37, Failure to provide police protection--Domestic violence (2010).

CHAPTER 3

# CIVIL LIABILITY UNDER
# FEDERAL LAW: § 1983 CASES

**INTRODUCTION**

**I.  § 1983 CASES**

    A. The Law
    B. History of the Law
    C. Why § 1983 Lawsuits Are Popular
    D. Roadblocks to Criminal Cases Against a Public Officer

**II. TWO REQUIREMENTS FOR A § 1983 LAWSUIT TO SUCCEED**

    A. The Defendant Acted Under Color of Law
    B. The Violation Must Be of a Constitutional Right or of a Right Given by
       Federal (but Not State) Law

**III. OTHER LEGAL CONSIDERATIONS**

    A. The Violation Must Reach Constitutional Level
    B. The Defendant Must Be a Natural Person or a Local Government, but
       Not a State

**IV. DEFENSES IN § 1983 LAWSUITS**

    A. The Good Faith Defense as Defined in *Harlow* v. *Fitzgerald*
       1. Good Faith Defense Not Available to Agencies

    B. The Probable Cause Defense, but Only in Fourth Amendment Cases

**V. § 1983 AND STATE TORT CASES COMPARED**

**SUMMARY**

**NOTES**

# INTRODUCTION

Title 42 of the United States Code, § 1983 is perhaps the most frequently used provision in the array of legal liability statutes against public officials, the category of actors that includes probation and parole officers.[1] It is therefore important that this law be properly understood by probation and parole officers. This chapter discusses § 1983 cases, sometimes also known as civil rights cases. These cases are usually filed in federal courts and the plaintiff, as in state tort cases, seeks damages and/or changes in agency policy or practice.

# I. § 1983 CASES

## A. The Law

Title 42, United States Code, § 1983—Civil action for deprivation of rights, reads as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.[2]

## B. History of the Law

The Civil Rights Act of 1871[3] was enacted in the post-Civil War Reconstruction Era when Congress saw a need for civil remedy to address civil rights violations by state officials intrusive of liberty protected by the 14th Amendment to the Constitution.[4] It was not feasible at that time to enact a federal criminal statute to address such violations. Its immediate aim was to provide protection to those wronged through the misuse of power possessed by virtue of state law and made possible only because the wrongdoer was clothed with the authority of state law. As originally interpreted, however, the law did not apply to civil rights violations where the officer's conduct was such that it could not have been authorized by the agency; hence, it was seldom used. That picture changed in 1961 when *Monroe* v. *Pape*[5] was decided.

In *Monroe* v. *Pape,* the United States Supreme Court ruled that § 1983 applied to all violations of constitutional rights even where the public officer was acting outside the scope of employment. This greatly expanded the scope of protection of rights and gave impetus to a virtual avalanche of cases filed in federal courts based on a variety of alleged constitutional rights violations, whether the officer was acting within or outside the scope of duty.

## C. Why § 1983 Lawsuits Are Popular

Civil rights suits are a popular vehicle for plaintiffs for myriad reasons. First, they almost always seek damage from the defendant, meaning that if the plaintiff wins, somebody pays. This can be very intimidating to a probation or parole officer who may not have the personal resources or the insurance to cover liabilities. Second, civil rights suits can be filed as a class action lawsuit wherein several plaintiffs alleging similar violations are certified as a class and their case is heard collectively. This puts the plaintiffs in a position of strength and affords them moral support. Third, if a civil rights

suit succeeds, its effect is generic rather than specific. For example, if a civil rights suit succeeds in declaring unconstitutional the practice of giving parolees only one hearing before revocation instead of a preliminary and final hearing as indicated in *Morrissey* v. *Brewer*,[6] the ruling benefits all similarly situated parolees, not just the plaintiff. Fourth, civil rights cases are usually filed directly in federal courts where procedures for obtaining materials from the defendant (called "discovery") are often more liberal than in state courts. This facilitates access to important state documents and records needed for trial. A fifth, and perhaps most important reason, is that since 1976, under federal law, a prevailing plaintiff may recover attorney's fees. Consequently, lawyers have become more inclined to file § 1983 cases if they see any merit in the suit.

## D. Roadblocks to Criminal Cases Against a Public Officer

Plaintiffs use § 1983 suits extensively despite the availability of criminal sanctions against the public officer. One reason is that the two are not mutually exclusive. A case filed under § 1983 is a civil case in which the plaintiff seeks vindication of rights. The benefit to an aggrieved party if a criminal case is brought because of injury is less direct than the benefit to that party where damages are paid. Moreover, there are definite barriers to the use of criminal sanctions against erring probation or parole officers. Among these are the unwillingness of some district attorneys to file cases against public officers with whom they work regularly and whose help they may sometimes need. Another roadblock is that serious criminal cases in most states must be referred to a grand jury for indictment. Grand juries may not be inclined to charge public officers with criminal offenses unless it is shown clearly that the act was egregious. In many criminal cases involving alleged violation of rights, the evidence may come down to the word of the complainant against the word of a public officer. The grand jury may be more inclined to side with the probation or parole officer than the probationer or parolee. Finally, the degree of certainty needed to succeed in civil cases is mere preponderance of evidence (roughly, more than 50 percent certainty), much lower than the guilt beyond a reasonable doubt standard[7] needed to convict criminal defendants.

# II. TWO REQUIREMENTS FOR A § 1983 LAWSUIT TO SUCCEED

There are two requirements for a § 1983 lawsuit to succeed in court:

- The defendant acted under "color of law."

- The defendant violated a constitutional right or a right given by federal (but not by state) law.

## A. The Defendant Acted Under Color of Law

This requirement means the official must have misused power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."[8] Although it is easy to identify acts that are wholly within the term "color of law" (as where a probation officer conducts a presentence investigation pursuant to court order), there are gray areas that defy easy categorization (as where a probation officer makes a citizen's arrest, but identifies himself as an agent of the criminal justice system). As a general rule, much of what a probation or parole officer routinely does in the performance of her or his duties and during the usual hours is likely to be considered under color of state law. Conversely, what he or she does as a private citizen during his or her off-hours is likely to fall outside the color of state law. In general, an officer acts under color of law if the officer takes advantage of his or her authority to do what he or she did. Example: A probation officer sexually assaults a probationer during a home visit. The officer is acting under color of law.

As suggested by the preceding example, the term "color of law" does not mean that the act was in fact authorized by law. It is sufficient if the act appeared to be lawful even if it was not in fact authorized.[9] Hence, even if the probation or parole officer exceeded his or her lawful authority, he or she may still be considered to have acted under color of law. Indeed, sometimes it is either the plaintiff's or the defendant's subjective beliefs about whether the actions were under color of state law that control.[10]

Can federal officers be sued under § 1983? The answer, for the most part, is no. The plain language and case law surrounding § 1983 make it clear that it applies to persons acting under color of *state* law. Federal officials can be held liable under parallel authority pursuant to the United States Supreme Court decision in *Bivens* v. *Six Unknown Named Agents of Fed. Bureau of Narcotics.*[11] There the Court held that a cause of action, derived from the Constitution, exists in favor of victims of federal officials' misconduct. *Bivens* provides essentially the same protection against constitutional violations by federal officials that § 1983 provides as against state and local officers; the only real difference is that the former is a common law right, whereas the latter is statutory.[12] Moreover, a federal officer can be sued directly under § 1983 if he or she assists state officers who act under color of law.[13]

Can private contractors be sued under § 1983? Yes. Private contractors cannot be held to be acting under color of state law simply because they are contracting with state or local governments.[14] However, such contractors may be held to be acting under color of state law if either the conduct at issue is under control of the government[15] or the function provided by the contractor is typically within the exclusive purview of the government.[16]

## B. The Violation Must Be of a Constitutional Right or of a Right Given by Federal (but Not State) Law

Under this requirement, the right violated must be one that is guaranteed by the United States Constitution or is given the plaintiff by federal law. Rights provided exclusively under state law are not protected under § 1983. For example, the right to a lawyer during a parole release hearing is not given by the Constitution or by federal law, so a violation thereof cannot be adjudicated in a § 1983 suit. Instead, such right would have to be vindicated through state law remedies or administrative regulations.

The worrisome aspects of this requirement relate not to the acts of probation or parole officers that are blatantly violative of a known constitutional right (as when a probation officer conducts an illegal search). The problem lies in ascertaining whether a specific constitutional right exists in the first place. This is particularly troublesome in probation and parole where the courts have only recently started to define the specific rights to which probationers and parolees are constitutionally entitled. The United States Supreme Court has decided only a handful of cases thus far, although federal district courts and courts of appeals have decided many. Some of these decisions may be inconsistent with each other. It is important, therefore, for probation and parole officers to be familiar with the current law as decided by the courts in their own jurisdictions as this is the law that must be followed regardless of decisions to the contrary in other states.

A probation or parole officer is liable if the above two elements are present. Absence of one means that there is no liability under § 1983. The officer may, however, be liable under some other legal authority (e.g., tort or under the penal code). For example, a probation officer whose negligent driving results in injury to a probationer whom she is transporting may be liable under tort law for negligent driving, but not under §1983. Of course, the absence of any of the above elements does not prevent the *filing* of a § 1983 suit; suits may be filed by anybody at any time. Whether the suit will succeed is a different matter.

The United State Supreme Court has ruled that defendants in § 1983 lawsuits may raise the qualified (good faith) immunity defense in both motion to dismiss and motion for summary judgment, and may be able to appeal denials both times in the same case prior to trial.[17]

# III. OTHER LEGAL CONSIDERATIONS

Although § 1983 cases require only two elements to succeed (as discussed above), some elaboration is required in order to understand better the circumstances under which § 1983 cases succeed or fail.

## A. The Violation Must Reach Constitutional Level

Not all violations of rights lead to liability under § 1983. The violation must be of constitutional proportion. What this means is not exactly clear, except that unusually serious violations are actionable, whereas less serious ones are not. This is reflected in the requirement, previously noted, of "gross negligence" or "deliberate indifference," etc. In the words of one scholar:

> Courts cannot prohibit a given condition or type of treatment unless it reaches a level of constitutional abuse. Courts encounter numerous cases in which the acts or conditions under attack are clearly undesirable . . . but the courts are powerless to act because the practices are not so abusive as to violate a constitutional right.[18]

Relatively few wrongs involving probation or parole officers have been held by the courts to rise to the level of a constitutional violation remediable through § 1983. Cases where courts have found § 1983 either to be available or likely to be available (e.g., by allowing a § 1983 action to go forward on the ground that a constitutional right is involved) include:

- Conspiring with another to wrongfully confine a parolee as a parole violator.[19]

- Arbitrary denial of a furlough or work release.[20]

- Denial of the right to a parole revocation hearing.[21]

- Compelling a probationer to attend faith-based treatment programs for substance abuse (i.e., Alcoholics Anonymous).[22]

- Improper disclosure of a probationer's health status as HIV-positive.[23]

- Improper *failure* to disclose a parolee's HIV status may also be a constitutional violation.[24]

## B. The Defendant Must Be a Natural Person or a Local Government, but Not a State

When the Civil Rights Act of 1871 was originally enacted, only natural persons could be held liable in § 1983 suits. State and local governments were exempt because of the doctrine of sovereign immunity. In 1978, however, the United States Supreme Court, in Monell v. *Department of Social Services,*[25] held that the local units of government may be held liable if the allegedly unconstitutional action was taken by the officer as a part of an official policy or custom. Even a single act may qualify as an official policy if it is undertaken by the appropriate policymaking body or official.[26] The *Monell* Court explained that, in order to qualify as a custom, the practice must be "so permanent and well settled as to constitute a custom or usage with the force of law."[27] One court defined the requirement as follows:

> To establish a policy or custom, it is generally necessary to show a persistent and wide-spread practice. Moreover, actual or constructive knowledge of such customs must be attributed to the

governing body of the municipality. Normally random acts or isolated incidents are insufficient to establish a custom or policy.[28]

*Monell* does not affect state immunity because it applies to local governments only. This is not of much consolation to state officers, however; civil rights cases can be filed against the state officer himself, and he or she will be personally liable if the suit succeeds. Although *Monell* involved social services personnel, there is no reason to believe it does not apply to local probation/parole operations. Lower courts have already applied it to many local agencies.

Whereas local governments can be sued, states generally cannot be sued because they are insulated from liability by the doctrine of "sovereign immunity," which means that a sovereign is immune from lawsuit because it can do no wrong. States cannot be sued in federal court because of the Eleventh Amendment.[29] Federal courts have held that states are similarly immune from being subjected to suits in their own jurisdictions.[30] The one big exception to this rule, however, is if sovereign immunity has been waived by the state (and many states have waived sovereign immunity in varying degrees, thus allowing themselves to be sued) through legislation or court decisions.

# IV. DEFENSES IN § 1983 LAWSUITS

There are a number of defenses to § 1983 cases, usually depending upon the facts of the case. Two of those defenses (the others being more technical) are discussed here. One is the good faith defense and the other the probable cause defense.

## A. The Good Faith Defense as Defined in *Harlow* v. *Fitzgerald*

The "good faith" defense in § 1983 cases holds that an officer is not civilly liable unless he or she violated a clearly established statutory or constitutional right of which a reasonable person would have known. This definition was given in the 1983 case of *Harlow* v. *Fitzgerald,* wherein the Court said:

> We therefore hold that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate a clearly established statutory or constitutional right of which a reasonable person would have known. . . . The judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to "know" that the law forbade conduct not previously identified as unlawful. (citations and notes omitted).[31]

Thus, the good faith defense articulated in *Harlow* will be available to defend against liability unless two requirements are met: (a) an officer violated a clearly established statutory or constitutional right, and (b) the right is one of which a reasonable person would have known. Both must be established by the plaintiff; otherwise no liability is imposed.

Although the *Harlow* case, above, did not involve probation or parole officers (it involved two White House aides under former President Nixon), the Supreme Court, in *Anderson* v. *Creighton,*[32] held that the *Harlow* standard applies to other public officers, such as the police, who are performing their responsibilities. In *Anderson,* officers conducted a warrantless search of a home, believing that a bank robber was hiding there. The family that occupied the home sued for violation of the Fourth Amendment right against unreasonable search and seizure. On appeal, the Supreme Court held that the lower court should have considered not only the general rule about home entries, but also the facts known to the agents at the time of entry. According to the Court, the proper inquiry was whether a reasonable law enforcement officer could have concluded that the circumstances surrounding that case added up to probable cause and exigent circumstances, which would then justify a warrantless

search. If such a conclusion is possible, then the good faith defense applies. This should apply to probation and parole officers as well. In short, if a reasonable probation or parole officer could have concluded that the circumstances surrounding the act make the action taken legal and valid, then the good faith defense should apply.

When is a right considered to be "clearly established?" The Federal Court of Appeals for the Fifth Circuit sets this standard: "A plaintiff must show that, when the defendant acted, the law established the contours of a right so clearly that a reasonable official would have understood his or her acts were unlawful." The added that: "If reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity."[33] It is worth noting that, although this case continues to control the Fifth Circuit,[34] it has not been embraced elsewhere.

The good faith defense has two important implications for probation and parole officers and agencies. First, officers must know the basic constitutional and federal rights of offenders. Although officers may be familiar with these rights from college courses and corrections training, their knowledge should be updated constantly in light of new court decisions in criminal procedure and constitutional law. The second implication of the *Harlow* test is that it places an obligation on criminal justice agencies to inform their officers of new cases that establish constitutional rights. Moreover, agencies must update their manuals or guidelines to reflect decided cases not only from the United States Supreme Court but also from federal courts in their jurisdiction.

### 1. Good Faith Defense Not Available to Agencies

Although the good faith defense articulated in *Harlow* is available to government actors sued in their individual capacities, the defense does not extend to the government agencies themselves. In *Owen v. City of Independence*,[35] the U.S. Supreme Court held that a municipality sued under § 1983 cannot invoke the good faith defense. Stating that individual blameworthiness is no longer the acid test of liability, the Court said that "the principle of equitable loss-spreading has joined fault as a factor in distributing the costs of official misconduct."[36] The decision concluded thus:

> The innocent individual who is harmed by an abuse of governmental authority is assured that he will be compensated for his injury. The offending official, so long as he conducts himself in good faith, may go about his business secure in the knowledge that a qualified immunity will protect him from personal liability for damages that are more appropriately chargeable to the populace as a whole.[37]

The decision should concern probation and parole agencies because it suggests that, where agencies have violated constitutional rights of probationers or parolees, those agencies may not be let off the proverbial hook as readily as the government actors themselves. One way of looking at this holding is that individual officers may be excused for violating constitutional rights if they did not (and could not have) known better, but agencies will be held liable. The *Owen* Court, in fact, hoped that the threat that damages may be levied against the city might encourage those in policymaking positions to institute internal rules and programs designed to minimize the likelihood of unintentional infringements on constitutional rights. In addition, the Court anticipated that the threat of liability ought to increase the attentiveness with which officials at higher levels of government supervise the conduct of their subordinates.

## B. The Probable Cause Defense, but Only in Fourth Amendment Cases

The second defense in § 1983 discussed in this chapter is the probable cause defense. It states that the officer is not liable in cases where probable cause is present. It is a limited type of defense because it applies only in fourth amendment cases where probable cause is required for the probation or parole officer to be able to act legally. It cannot be used in cases alleging violations of other constitutional rights, such as the 1st, 5th, 6th, or 14th amendments.

In evaluating the availability of the defense to police officers who violated the Fourth Amendment in the mistaken belief that they had probable cause to search and arrest, The Ninth Circuit Court of Appeals held "that the officers are entitled to qualified immunity on this claim because a reasonable officer could have believed that probable cause existed."[38]

The Second Circuit Court of Appeals decision in the aforementioned *Bivens* case held the probable cause defense operates as follows:

> Therefore, to prevail the police officer need not allege and prove probable cause in the consti-
> tutional sense. The standard governing police conduct is composed of two elements, the first is
> subjective and the second is objective. Thus the officer must allege and prove not only that he
> believed, in good faith, that his conduct was lawful, but also that his belief was reasonable. And
> so we hold that it is a defense to allege and prove good faith and reasonable belief in the validity
> of the arrest and search and in the necessity for carrying out the arrest and search in the way the
> arrest was made and the search was conducted.[39]

This standard is lower than for the Fourth Amendment concept of probable cause, which is defined as

> more than bare suspicion.... It exists when the facts and circumstances within the officers' knowl-
> edge and of which they had reasonably trustworthy information are sufficient in themselves to
> warrant a man of reasonable caution in the belief that an offense has been or is being committed.[40]

# V. § 1983 AND STATE TORT CASES COMPARED

State tort cases (discussed in chapter 2) and § 1983 cases (discussed in this chapter) can be con-
fusing unless their basic features are identified. Table 3–1 presents a comparison of these two types
of lawsuits that are usually brought against probation/parole officers.

## Table 3–1. Types of Lawsuits Brought Against Probation/Parole Officers

| Federal (§1983) Cases | State Tort Cases |
|---|---|
| Based on federal law | Based on state law |
| Plaintiff seeks money for damages and/or policy change | Plaintiff seeks money for damages |
| Law was passed in 1871 | Usually based on decided cases |
| Usually tried in federal court | Usually tried in state court |
| Only public officials can be sued | Public officials and private persons can be sued |
| Basis for liability is violation of a constitutional right or of a right secured by federal law | Basis for liability is injury to person or property of another in violation of a duty imposed by state law |
| "Good faith" defense means the officer did not violate a clearly established constitutional or federal right of which a reasonable person should have known | "Good faith" defense usually means the officer acted in the honest belief that the action taken was appropriate under the circumstances |

# SUMMARY

Civil liability cases in federal court are generally known as Section 1983 cases. Based on Title 42 of the United States Code, § 1983, these cases need two requirements if they are to succeed. The first is that the defendant acted under color of law; the second is that the violation must be of a constitutional right or of a right given by federal (but not by state) law. There are a number of defenses in Section 1983 cases, two of which are discussed in this chapter. The first is the good faith defense, meaning that the officer is not liable unless he or she violated a clearly established statutory or constitutional right of which a reasonable person would have known. This good faith definition in Section 1983 cases is different from the good faith definition in state tort cases. The second defense is probable cause, meaning that the officer is not liable if probable cause was present when the action was taken. This defense, however, is limited only to Fourth Amendment cases and does not apply to violations of any other constitutional right.

# NOTES

1. Erika A. Swanson, Who Framed Roger Devereaux? *Devereaux* v. *Perex,* a Deliberate Indifference Standard, and a Right not to be Framed in the Context of Child Sex Abuse Investigations, 77 Chicago-Kent L.Rev. 901 (2002).

2. 42 U.S.Code, § 1983 (2006).

3. Act of Apr. 20, 1871, ch. 22; 17 Stat 13, (Also known as the Ku Klux Klan Act).

4. 15 Am. Jur. 2d Civil Rights § 63 (Westlaw, July 2010).

5. *Monroe* v. *Pape,* 365 U.S. 167 (1961).

6. *Morrissey* v. *Brewer,* 408 U.S. 471 (1972).

7. Courts are famously reluctant to quantify "proof beyond a reasonable doubt" in terms of percentages, but one commonly accepted definition is "the kind of doubt which people in the more serious and important affairs of their own lives might be willing to act upon" (29 Am. Jur. 2d Evidence § 186 (Westlaw, July 2010)).

8. *West* v. *Atkins,* 487 U.S. 42, 49 (1988) (quoting *United States* v. *Classic,* 313 U.S. 299, 326 (1941)).

9. *Davis* v. *Murphy,* 559 F.2d 1098, 1101 (7th Cir. 1977) (holding officers acted under color of state law in provoking a fight because they were carrying guns and badges).

10. Steve Libby, When Off-Duty State Officials Act Under Color of State Law For the Purposes of Section 1983, 22 Memphis S.U.L.Rev. 725 (1992).

11. *Bivens* v. *Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388, 410 (1971).

12. *Wilson* v. *Layne,* 526 US 603, 609 (1999).

13. *Cabrera* v. *Martin,* 973 F.2d 735 (9th Cir. 1992); Hurt v. Philadelphia Housing Authority, 806 F. Supp. 515 (E.D. Pa. 1992).

14. 15 Am. Jur. 2d Civil Rights § 77 (Westlaw, July 2010).

15. *Chan* v. *City of New York,* 1 F.3d 96 (2d Cir 1993).

16. *Ancata* v. *Prison Health Services,* Inc. 769 F.2d 700 (11th Cir. 1995).

17. *Behrens* v. *Pelletier,* 516 U.S. 299 (1996) 63C Am. Jur. 2d Public Officers and Employees § 398 (Westlaw, July 2010).

18. Note, Decency and Fairness: An Emerging Judicial Role in Prison Reform, 72 Va.L.Rev. 841, 843 (1971).

19. *Ackerman* v. *Putnam,* 295 F.Supp 1023 (DC Pa) 1969).

20. *Brooks* v. *Dunn,* 376 F.Supp. 976 (DC Va 1974); *Gahagan* v. *Pennsylvania Board of Probation and Parole,* 444 F.Supp. 1326 (DC Pa 1978).

21. *Morrissey* v. *Brewer,* 408 U.S. 471 (1972).

22. *In re Garcia,* 24 P.3d 1091 (Wash. Ct. App. 2001); *Warner* v. *Orange County Department of Probation,* 115 F.3d 1068 (2d Cir. 1997).

23. *Herring* v. *Keenan,* 218 F.3d 1171 (10th Cir. 2000).

24. See *Greer* v. *Schoop,* 141 F.3d 824 (8th Cir. 1998) (assumed without deciding the failure to warn the parolee's girlfriend of his HIV status was a constitutional violation; case decided on the ground that such right was not clearly established at the time).

25. 436 U.S. 658 (1978).

26. 81 A.L.R. 549, at § 3 (Westlaw, October 2010).

27. *Monell* v. *Department of Social Services,* 436 U.S. 658, 691 (1978); see also *T.Z.* v. *City of New York,* 635 F.Supp.2d. 152 (E.D. NY 2009).

28. *Depew* v. *City of St. Mary's, Georgia,* 787 F.2d. 1496 (11th Cir. 1986).

29. 15 Am. Jur. 2d Civil Rights § 99 (Westlaw, July 2010).

30. *Doe* v. *Leach,* 988 P.2d 1252 (1999); *Nichols* v. *Danley,* 266 F.Supp.2d 1310 (D.NM 2003); *Will* v. *Michigan Dep't of State Police,* 491 U.S. 58 (1989).

31. *Harlow* v. *Fitzgerald,* 457 U.S. 800, 818 (1982).

32. *Anderson* v. *Creighton,* 483 U.S. 635 (1987).

33. *Fraire* v. *City of Arlington,* 957 F.2d 1268 (5th Cir. 1992).

34. *Bazan* v. *Hidalgo County,* 246 F.3d 481 (5th Cir. 2001); *Scallion* v. *Red River Parish,* 2007 WL 496624 (W.D.La. 2007).

35. 445 U.S. 622 (1980).

36. *Owen* v. *City of Independence, Mo,* 445 U.S. 622, 657.

37. *Owen* v. *City of Independence, Mo,* 445 U.S. 622, 657.

38. *Crowe* v. *County of San Diego,* 593 F.3d. 841, 869 (9th Cir. 2010). See also 61 A.L.R. Fed. 7, at § 2[a] (Westlaw, October 2010).

39. *Bivens* v. *Six Unknown Named Agents of Fed. Bur. of Narc.,* 1972, 456 F.2d 1339, 348 (2d. Cir. 1972).

40. *Brinegar* v. *U.S.,* 338 U.S. 160, 175-176 quoting *Carroll* v. *United States,* 267 U.S. 132, 162 (1925).

CHAPTER 17

# QUESTIONS, SPECIFIC CONCERNS, AND GENERAL ADVICE

**INTRODUCTION**

**I. QUESTIONS**

**II. SPECIFIC CONCERNS FOR PROBATION/PAROLE OFFICERS**

A. Legal Representation

B. Indemnification

C. Professional Liability Insurance

D. Immunity Statutes

E. Source of Authoritative Information

**A FINAL WORD**

**NOTES**

# INTRODUCTION

This final chapter features questions, specific concerns, and general advice that should be of help to readers. Taken from the first edition of the book, the questions that start the chapter are a composite of the concerns expressed by the Board of Consultants for the first edition. The questions are featured in this final chapter to heighten awareness of the legal issues that need further study and exploration in specific jurisdictions.

The chapter also addresses five concerns: legal representation, indemnification, professional liability insurance, immunity statutes, and sources of authoritative information. Not much has changed in these concerns since the first edition was published; therefore, these concerns are reiterated.

Finally, general advice is given to probation and parole officers on how legal liability might be minimized or avoided. The generic advice given here represents the composite result of an extensive national survey of offices of attorneys general that was conducted in the early eighties for the first edition of this book. There is every reason to think that their advice would be the same today; hence, that part of the survey is replicated in this edition. It is not meant, however, to preempt the advice of a legal counsel who is more familiar with the law in specific jurisdictions.

# I. QUESTIONS

For better legal protection and deeper awareness, listed below are important questions probation and parole officers should ask and for which they should obtain answers from their employers and legal advisors. These questions highlight several vital issues addressed in this monograph and help apply these legal concerns to individual states or jurisdictions. It would be in the interest of probation/parole officers to arrange a seminar or workshop with their employers, legal advisors, or other knowledgeable persons who can give authoritative answers to the following:

1.  If I am sued in a criminal, tort, or civil liability action in state or federal court, will my agency or employer provide a lawyer to represent me?

2.  If a parolee, probationer, or anyone else is contemplating suit against the agency, agency personnel, or me, and I am contacted by their lawyer, what should I do?

3.  What specifically should I do if and when I am served with legal papers and/or court documents indicating that a lawsuit has been filed against me?

4.  If there is a conflict of interests between me and a codefendant, or me and my agency, will the government appoint a different attorney for me?

5.  Are there any special defenses available to me as a state probation/parole officer in a tort suit in which I am the defendant?

6.  Are there any specific criminal laws in my jurisdiction of which I must be aware that apply specifically to probation and/or parole officers or public officials/employees?

7.  Are there any decided cases in my state where a probation or parole officer has been held liable under state tort law either to the client or to a third party? If yes, how will those cases affect me?

8.  What type of immunity, if any, do I enjoy as a probation/parole officer under my state's law?

9.  Does our state have laws that would indemnify me if I am found liable in a state tort or a federal civil rights action? If so, how do these laws apply to me? Is the coverage mandatory or optional?

10. What do I have to do to enhance my chances of indemnification if I am sued? What procedures must I follow?

11. What is the best way, consistent with the laws of my state, to protect my personal assets from seizure and execution for satisfaction of a judgment against me?

12. Is there any kind of liability insurance available to me individually or as a member of a group through the government or privately?

13. Does our state have a state civil rights law that might affect me in my work? If so, what and how?

14. Does our state have a law covering the issue of disclosure of information about the offender to others (e.g., privacy laws, laws on confidentiality of criminal offender record information, and laws on the confidentiality of mental health, education, and vocational information)? If so, how does it apply to me and what are the penalties and procedures for violations?

15. Does our state have a state law that gives the offender, his or her lawyer, his or her designate, or others access to information in my file or in my reports? If so, what are the specific requirements and what are the penalties and procedures for noncompliance?

16. Does our state have an Administrative Procedures Act that applies to me? If so, how?

17. As a parole officer, what should I do if, at a revocation hearing, I feel that the hearing officer is denying the parolee his or her rights to due process under Morrissey?

18. Is there a compilation of regulations, policies, and directives that govern my conduct as an employee and relate specifically as to my work with offenders?

19. Who is my legal advisor? Is there any public official to whom I can turn who is obligated to advise me in legal matters and upon whose advice I am entitled to rely?

20. Am I a peace officer? What are my law enforcement powers vis-à-vis arrest, search, seizure, and ability to assist and be assisted by law enforcement officers? Am I empowered to carry a weapon?

21. Does my court or agency have any guidelines on arrest and search or frisk of offenders and their homes and property?

22. Are there specific laws in our state that relate to my responsibilities and duties as a public employee and as a probation or parole officer in particular? What are they?

23. Are there specific laws in our jurisdiction that set out the rights and duties of my offenders?

24. Do we have a written policy on assessment of restitution that will give the probationer access to a judicial determination if he disagrees with the amount claimed by the victim or assessed preliminarily by me?

25. According to state law or court decisions in this state, can a judge or parole board delegate the imposition of conditions or the setting of the restitution amount to me? If these cannot be delegated, but judges or boards do it anyway, what is my best defense under state law against liability?

26. Do we have a written policy on my imposing or modifying conditions of probation or parole that will give the offender immediate access to the judge or board if he contests my action?

27. What should I do about transporting offenders (prisoners) in my private vehicle? What responsibility will my employer assume in the event of an auto accident?

28. Should I warn third persons if I believe the offender presents a possible danger to them? If so, under what circumstances? If it is a close call, whom should I contact for advice?

29. Do you want me to advise offenders on procedures and on how to put their "best foot forward" when appearing before the court or board?

30. Do you want every violation reported to the court or parole board?

31. What do the terms "good faith" and "negligence" mean in our state?

32. How can I be sure that I am informed on an up-to-date basis regarding administrative rules, regulations, and decided cases affecting me?

# II. SPECIFIC CONCERNS FOR PROBATION/PAROLE OFFICERS

## A. Legal Representation

Legal representation should rank as a major concern of probation and parole officers. In some states, an unwritten understanding exists that allows the state attorney general to undertake the defense of a public officer if, in the attorney general's judgment, the case is meritorious. This informal but pervasive practice creates uncertainty and allows for denial of representation based on political or personal considerations. States use various guidelines in deciding the kinds of acts they will defend. Although all of the states surveyed for the first edition of this monograph stated that they provide legal representation at least some of the time, a substantial number indicated that they will not defend in all civil suits. The same survey showed that half of the states will not undertake the defense of an officer accused of a crime. Legal representation can be undertaken by the office of the attorney general, the city or county legal officers, or through a system similar to medical insurance where an employee has the option to choose his or her own lawyer.

Legal representation at the local government level is much less reassuring than representation for state officers. This is significant because although parole agencies in a great majority of states are administered and funded by the states, probation offices are typically under much more local control, either by local judicial districts, judges, or political agencies. Each agency determines the type of legal representation it gives to local public officers. Arrangements vary from allowing local officials to get their own lawyer at county's expense to having the county or district attorney represent the officer. Whatever the arrangement, it is important that the policy on representation and indemnification be clarified and formalized. An informal policy ("Don't worry, we will take care of you if a lawsuit is filed") should be avoided because it can be implemented selectively and is far from reassuring.

## B. Indemnification

Closely related to representation is the issue of indemnification, if and when the officer is held liable. A majority of the states provide indemnification for the civil liabilities of their public employees, albeit in varying amounts. The conditions under which the state will pay also vary and are sometimes unclear. Moreover, although most states provide for some form of indemnification, states often do not automatically indemnify. In most states and local agencies, employees can expect the state to help pay the judgment only if the act on which the finding of liability is based was within the scope of employment and done in good faith. The definitions of the terms "within the scope of employment" and "good faith" vary from state to state, and a decision not to represent an employee is usually final and not appealable.

Probation and parole officers are advised to look into their specific state statutes covering legal representation and indemnification. Part of the lack of protection comes from a definitional problem. Although it is difficult, if not impossible, to spell out very specific guidelines that further refine the phrases "acting within the scope of duty" and "good faith," working definitions of these terms go a long way toward alleviating anxiety and minimizing arbitrariness. Such definitions are not laid out in a number of current statutes.

For purposes of maximum protection, it is important that there be an understanding that a trial court's finding that the officer acted outside the scope of his or her duty and in the absence of good faith not be dispositive of representation or, especially, indemnification. An independent assessment should be undertaken by the state authority that represents and indemnifies (usually the attorney general's office for state officers and the district attorney or county attorney for local officers), based on circumstances as determined by that agency. Only cases that are egregious and obviously outside the scope of employment should be denied legal representation and indemnification. Without this understanding, a state's legal representation and indemnification law can be ineffective because, as current case law stands, acts that are performed by probation and parole officers in good faith and within the scope of their employment are exempt from liability anyway. So, because of the prerequisite of the "good faith" and "acting within the scope of employment" provisions of most state laws, an officer who acts in good faith has no liability (and therefore needs no indemnification), whereas one who is adjudged liable (and therefore needs indemnification) cannot be indemnified under most state laws because he acted in bad faith and/or outside the scope of employment.

## C. Professional Liability Insurance

Professional liability insurance should be given serious consideration along with the issues of legal representation and indemnification. According to the project survey for the first edition, only a minority of states (30 percent) have insurance protection for probation and parole officers. Insurance is particularly desirable in states where legal representation or indemnification is either absent or uncertain. This is because insurance companies may provide both legal counsel and damage compensation.

The problems associated with professional liability insurance, however, are myriad. First, although law enforcement officers can easily obtain insurance, only a few insurance companies carry liability insurance for corrections personnel. Second, who pays the premium? Ideally, it should be paid by the agency, but some states and local government units do not allow public money to be used for employee liability insurance. Third, policymakers, whether at the state or local level, may not be disposed to obtain liability insurance for their employees because of high premiums, preferring instead to be self-insured, meaning that they will pay out of their own funds if liability ensues. The employee paying the premium is always an option, but that can be prohibitive for the employee.

## D. Immunity Statutes

Another possible source of protection that should be explored by probation and parole officers requires action by state legislatures. The United States Supreme Court, in *Martinez* v. *California*,[1] held that California's immunity statute was constitutional when applied to defeat a tort claim arising under state law. That section of the California law (§ 845.8(a) of the California Government Code) provides as follows:

> Neither a public entity nor a public employee is liable for: (a) Any injury resulting from determining whether to parole or release a prisoner or from determining the terms and conditions of his parole or release or from determining whether to revoke his parole or release.[2]

A similar statute may be enacted by other states at the initiative of probation or parole officers.

It is worth remembering, however, that a state-enacted exception from civil liability does not apply to § 1983 cases because the latter are based on federal law. Despite this limitation, a state immunity statute does extend considerable protection to public officers. Although the California statute specifically limits its coverage to parole cases, there appears to be no legal impediment to extending that coverage to include probation officers, particularly on such matters as the setting of conditions, supervision, and probation revocation.

## E. Source of Authoritative Information

Probation and parole officers in each state need a source to which they can turn for authoritative information on the topics addressed here. It is suggested that, at the very least, each state develop a manual, perhaps focused on the topics discussed in this monograph. Some states have already done this, focusing on specific areas of concern. The state manual need not be lengthy, but it must contain information specific to that state. The topics discussed in this monograph, as well as the questions listed above, should be helpful starting points. Agency manual writers should remember, however, that this monograph gives generic information that may not apply to each state or jurisdiction. Moreover, the information in this publication may quickly be superseded by new decisions and statutory developments. Each state should update the information in its manual periodically, perhaps through the probation/parole or corrections association's newsletter or occasional memoranda from the probation/parole agency or the office of the state's attorney general.

What three most important bits of legal advice would you give probation and parole officers to help them avoid or lessen possible legal liability in connection with their work?

There is no more recent survey than that conducted for the first edition, which was done in the early 1980s, but the answers are not likely to have changed over the years. The results of that survey are therefore reproduced here. Ranked in the order of response frequency, the top five answers were as follows:

- Document your activities. Keep good records. (40 percent)
- Know and follow departmental rules and regulations and your state statutes. (35 percent)
- Arrange for legal counsel and seek legal advice whenever questions arise. (27 percent)
- Act within the scope of your duties, and in good faith. (20 percent)
- Get approval from your supervisor if you have questions about what you are doing. (18 percent)

Other bits of advice (in descending order) were:

- Keep up with developments in your field (e.g., relevant legal developments, statutes, new departmental regulations). Ignorance of the law or regulations excuses no one.
- Use common sense.
- Review important decisions with supervisors.
- Undertake thorough investigations before making recommendations.
- Report the violations of offenders.
- Notify your supervisor immediately if you suspect that legal action is being seriously contemplated.
- Have clear and comprehensive policies in your department.
- Perform duties on time.
- Take out insurance.
- Stick to the facts in all dealings with clients.
- Do not get personally involved with offenders.
- Be familiar with revocation procedures.
- Keep out of politics.

ı  Advise officers on ethical practices.

ı  Do not act as a police officer.

ı  Avoid transporting offenders when possible.

ı  Ensure safeguards for client property.

On one hand, it behooves probation and parole officers to take to heart these words of advice from legal professionals in the field. On the other hand, a word of caution is in order; knowledge of legal responsibilities and awareness of possible liabilities could lead an officer to excessive caution amounting to inaction. This should be avoided because reluctance or failure to perform one's duties can be more damaging than acting incorrectly. In case of doubt, the general rule is to be guided by the principle of fundamental fairness in decision- making, whether that decision is made by a probation or parole officer or a supervisor. Fundamental fairness is the essence of due process and should go a long way toward minimizing liability if a lawsuit arises.

## A FINAL WORD

Lawsuits are a burden. They cause anxiety, drain time, cost money, and exact a heavy toll on all of the parties involved. A countersuit by the probation or parole officer in retaliation is, at times, an attractive possibility. The prudent officer should be aware that this may actually exacerbate the problem, generating more anxiety, cost, time, and so forth. Avoidance of lawsuits through proper job performance and fundamental fairness is the wiser option as probation and parole officers continue to discharge their duties and responsibilities in a time of legal challenge and constant change. It appears as though most lawsuits against probation and parole officers and agencies do not succeed. Moreover, a thoughtful and careful review of the cases where officers and agencies do lose reveals that a little common sense and a lot of good faith go a long way toward protecting against liability.

## NOTES

1. 444 U.S. 275 (1980).

2. Cal. Gov. Code, § 845.8(a) (1995).