UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| DANIEL E. SULLIVAN, III, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 15-cv-12686-IT |
| | * | |
| MELISSA MELIA, | * | |
| *in her official and/or* | * | |
| *individual capacities* | * | |
| Defendant. | * | |

MEMORANDUM & ORDER

December 23, 2015

TALWANI, D.J.

I.      Introduction

Plaintiff Daniel E. Sullivan, III ("Sullivan") brings this suit against Defendant Melissa Melia ("Melia"), in both her individual and official capacities, for civil rights and state-law violations arising out of Sullivan's revocation hearing on June 22, 2012.  Presently before this court is Melia's Motion to Dismiss [#10].  For the reasons described herein, Melia's Motion to Dismiss is ALLOWED.

II.      Facts as Alleged in the Complaint

Sullivan was sentenced to supervised probation on March 1, 2012, which extended from March 2, 2012 through December 8, 2014.  See Compl. at 3-4, ¶¶ 1, 5 [#1].  Melia was assigned as Sullivan's probation officer on March 2, 2012, id. at 4, ¶ 6, and she was supervised by Chief Probation Officer Timothy Norris ("Norris"), id. at 16, ¶ 48.  Sullivan requested to be fitted with a GPS bracelet, and the GPS bracelet was included as a term of his probation.  Id. at 4, ¶ 3.  The

Massachusetts Probation Department's Electronic Monitoring Program ("ELMO") provided the GPS bracelet to track Sullivan during his supervised release.  Id. at 4, ¶ 8.  Sullivan alleges a history of problems with his GPS tracking bracelet and expressed concerns that the bracelet would not properly track his signal nor fully charge.  Id. at 4-6, ¶¶ 8-20.  These issues continued after Sullivan reported them to ELMO, and the GPS was replaced four times between March 1, 2012 and April 23, 2013.  See id.  Sullivan discussed these problems with both Melia and Norris on June 6, 2012.  Id. at 5, ¶¶ 11-17.  Norris instructed Sullivan to "keep your GPS fully charged all the time" because "the GPS is the only thing keeping you out of jail."  Id. at 5, ¶¶ 12, 16; 10, ¶¶ 37-39.

On June 22, 2012, Melia requested that Sullivan appear before the Plymouth District Court Probation Department ("Probation") immediately.  Id. at 6, ¶ 1.  When Sullivan arrived, Melia stated that both ELMO and Melia had attempted to call Sullivan thirty to forty times the previous night without successfully reaching him.  Id. at 7, ¶ 16.  Sullivan explained that he had not received the calls on his cell phone, and his landline was disconnected.  Id. at 8, ¶¶ 17, 22. Sullivan printed his call history, which did not show any calls from either ELMO or Melia, and presented it to Melia.  Id. at 8, ¶¶ 22-25; Ex. 1.  Melia nonetheless directed him to appear in Arraignment Court because he failed to comply with the terms of his probation requiring him to keep his GPS unit charged and in working condition.  Id. at 8-9, ¶¶ 21-26, 32.  Plymouth District Court Judge Brian Gilligan ordered that Sullivan be held until his revocation hearing later in the afternoon.  Id. at 9, ¶ 30.  Sullivan was placed in a holding cell in the basement of the courthouse until his revocation hearing.  Id. at 9, ¶ 31.

At Sullivan's revocation hearing, Melia asked Judge Gilligan to find Sullivan in violation of his probation because he had "failed to keep the GPS battery charged at all times."  Id. at 9,

¶ 32.  Regarding the phone log, Melia told Judge Gillian, "I actually don't have that from today." Id. at 10, ¶ 35.  She claimed that ELMO unsuccessfully made "numerous phone calls over night." Id. at 10, ¶ 35.  Melia stated that she and Sullivan had discussed similar problems with this same unit on June 6, 2012, and Sullivan had been warned about "the importance of complying with the GPS and charging the GPS."  Id. at 10, ¶¶ 37-39.  Melia also asserted that her calls to Sullivan's cell phone "went straight to voicemail which was full."  Id. at 10, ¶ 35.  Sullivan argued that his GPS unit was both "new to probation" and to Sullivan, and there was a problem with his GPS charging mechanism.  Id. at 9, ¶ 34.  Further, he argued that his phone log disproved Melia's claims because it did not show calls from either ELMO or Probation.  Id.

Judge Gilligan found probable cause to hold Sullivan for a final surrender hearing.  Id. at 10, ¶ 40.  Sullivan was held for five days before that hearing.  See id. at 10, ¶ 43.  On June 27, 2012, Judge Rosemary Minehan maintained the terms of his probation but imposed a curfew from 11:30 p.m. to 5:00 a.m. at Melia's request.  Id. at 10, ¶¶ 43-44.  With the addition of the curfew, Sullivan was subsequently released from custody.  Id. at 10, ¶ 44.

Sullivan alleges three instances of perjury during that hearing: 1) Melia claimed to not have a copy of Sullivan's cell phone call log, 2) Melia testified that Probation had called Sullivan multiple times the evening of June 21, 2012, [1] and 3) Melia testified that Sullivan had failed to charge his GPS bracelet properly.  Id. at 10, ¶¶ 35, 39.

---

[1] For the purpose of this motion to dismiss, the court assumes all of Sullivan's factual allegations are true.  See Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).  Nonetheless, the facts as alleged do not establish that Probation and ELMO did not attempt to call Sullivan the night of June 21, 2012 given the problems with Sullivan's GPS bracelet and that his cellphone voicemail box was full.  See Compl. at 5-6, ¶¶ 18-19; 10, ¶ 35.  At most, Sullivan's phone log confirms that Melia and ELMO were unsuccessful in completing calls to Sullivan the night of June 21, 2012.

III.   Procedural History

Sullivan filed this action on June 22, 2015 against Melia, claiming that her testimony was "false, malicious, defamatory, deceitful, harmful or damaging." Id. at 11, ¶ 45.  Sullivan alleges in Counts 1-5 that Melia, in both her individual and official capacities, violated his rights under 42 U.S.C. §§ 1981, 1983, and 1985(3) as a result of that purportedly false testimony in that he was 1) wrongfully arrested, 2) unlawfully and maliciously detained and confined, 3) unlawfully and maliciously subject to a strip search, 4) subject to an unlawful and malicious conspiracy between Melia and Norris, and 5) falsely or wrongfully violated and jailed because Norris knowingly, recklessly or with gross negligence failed to supervise and control Melia's actions. Compl. 12-18.  Based on the same testimony, Sullivan alleges further in Counts 6-13 state-law claims of 1) malicious prosecution, 2) malicious abuse of process, 3) deprivation of due process and liberty interests in violation of Mass. Gen. Laws ch. 12 § 11(i), 4) false arrest and imprisonment, 5) conspiracy, 6) intentional infliction of emotional distress, 7) negligence, and 8) negligent infliction of emotional distress.  Id. at 18-30.  Melia has moved to dismiss all of Sullivan's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

IV.   Discussion

   A.  Standard of Review

A party may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive such a motion to dismiss, the well-pleaded facts in plaintiff's complaint must "state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  Assuming that plaintiff's factual allegations are true, these allegations "must be enough to raise a right to relief above the speculative level."  Id.

at 555.  This plausibility requirement necessitates that the complaint plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). Ultimately, dismissal is appropriate if the pleadings do not contain "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005) (quoting Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997)).

      ***B.  Absolute immunity bars claims against Melia individually***

      Melia moves to dismiss Sullivan's claims under §§ 1981, 1983, and 1985(3) on the ground that she is immune from claims against her in her individual capacity.  Mem. Supp. Def.'s Mot. Dismiss, at 5 [#11] [hereinafter Mem.].  Immunity is determined by the functions an officer performs rather than strict categorization based on the type of officer.  See Forrester v. White, 484 U.S. 219, 227 (1988) ("[I]mmunity is justified and defined by the *functions* it protects and serves, not by the person to whom it attaches.") (emphasis in the original).  Where applicable, such immunity applies to suits against an official in her individual capacity.  See Bettencourt v. Bd. of Registration in Med., 904 F.2d 772, 781 (1st Cir. 1990).

      Melia claims absolute immunity based on the functions she performed here.  Sullivan's claim are based on Melia's purported false testimony.  Immunity in connection with such testimony derives from the English common law tradition, which prohibited liability for damages arising from the testimony during judicial proceedings of either parties or witnesses.  See Briscoe v. LaHue, 460 U.S. 325, 330-31 (1983).   Absolute immunity attaches to a witness because of the importance of resolving disputes through the judicial process.  Id. at 332-33 ("[T]he claims of the individual must yield to the dictates of public policy, which requires that the paths which lead to

the ascertainment of truth should be left as free and unobstructed as possible." (quoting Calkins v. Sumner, 13 Wis. 193, 197 (1860))).  Such immunity ensures "the vigorous and fearless performance" of a testifying officer's duty, Imbler v. Pachtman, 424 U.S. 409, 427 (1976), and recognizes that "it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation."  Gregoire v. Biddle, 177 F.2d 579, 581 (2d Cir. 1949).  As a result, immunity ensures that testifying officials do not censor their testimony to protect themselves from future liability, which would deprive "the finder of fact of candid, objective, and undistorted evidence." Briscoe, 460 U.S. at 333; see also Knowlton v. Shaw, 704 F. 3d 1, 5 (1st Cir. 2013) (noting that absolute immunity extends to officers exercising prosecutorial or judicial functions relating to "judicial proceedings").  Absolute immunity ensures that probation officers, such as Melia, are able to freely testify during judicial proceedings.   Melia is therefore entitled to absolute immunity when she testified.  Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993) (finding that a parole officer is "absolutely immune from liability for the evidence he furnished" in a court proceeding).

Sullivan argues that immunity is inapplicable because Melia committed perjury during the revocation hearing on June 22, 2012.  Opp'n Mot. Dismiss, at 1-2 [#12].  Even assuming that Sullivan's factual allegations are true, his perjury claims are barred because Melia functioned as a witness providing essential testimony during the revocation hearing. See Briscoe, 460 U.S. at 335-36 (extending absolute immunity to witnesses "performing a critical role in the judicial process" to bar liability for perjury).  Accordingly, absolute immunity bars Sullivan's claims under §§ 1981, 1983, and 1985(3) against Melia in her individual capacity for her purported false

testimony.[2]

### C.  Sovereign immunity bars claims against Melia in her official capacity

Melia moves to dismiss Sullivan's claims against her in her official capacity under the doctrine of sovereign immunity.  Mem. 9-10.  Sovereign immunity under the Eleventh Amendment prohibits suit "against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  Sovereign immunity also applies to suits against a State brought by that State's own citizens.  See Hans v. Louisiana, 134 U.S. 1, 15 (1890).  Both "States and arms of the State" enjoy Eleventh Amendment immunity. See N. Ins. Co. of N.Y. v. Chatham Cty., Ga., 547 U.S. 189, 193 (2006).  A suit against Melia in her official capacity is equivalent to a suit against the Massachusetts Probation Service.  See Brandon v. Holt, 469 U.S. 464, 471-72 (1985) ("[A] judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents provided, of course, the public entity received notice and an opportunity to respond.").

The threshold question for claims of sovereign to immunity to is "whether an entity is acting as an arm of the State."  See N. Ins. Co. of N.Y., 547 U.S. at 194.  In making such an inquiry, the court asks "[h]as the state clearly structured the entity to share its sovereignty?"  See Fresenius Med. Care Cardiovascular Res., Inc. v. P.R. & Caribbean Cardiovascular Ctr. Corp., 322 F.3d 56, 68 (1st Cir. 2003).  This inquiry is guided by the degree of "control asserted by the state."  See id.  Here the Massachusetts Probation Service, as part of the Massachusetts trial

---

[2] The court does not reach Melia's further contention that she is entitled to absolute quasi-judicial immunity or qualified immunity as a probation officer.  See Mem. at 5; see also Pearson v. Callahan, 555 U.S. 223, 231 (2009) (shielding government officials who perform discretionary functions with the scope of their authority from liability, as long as they do not violate clearly established statutory or constitutional rights); Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 435-36 (1994) (extending absolute quasi-judicial immunity according to the "performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights.").

court system, is an "arm of the state" entitled to sovereign immunity where the trial system was

created by state statute and is funded by the Commonwealth of Massachusetts.  See Lewis v. W.

Roxbury Dist. Court, No. 12-11544-JLT, 2013 WL 4854117, at *5 (D. Mass. Sept. 10, 2013);

see also Haybarger v. Lawrence Cty. Adult Prob. & Parole, 551 F.3d 193, 201 (3d Cir. 2008)

("Pennsylvania's judicial districts, including their probation and parole departments, are

ordinarily entitled to Eleventh Amendment immunity as arms of the State.").  Sovereign

immunity is further applicable because there is a risk that any damages against the Probation

System "will be paid from the public treasury." See Fresenius, 322 F.3d at 68.

Although the Probation System is a protected arm of the state, Eleventh Amendment

immunity is not absolute.  A State may not be immune from suit in any one of the following

circumstances: 1) the State consents to suit in a federal forum; 2) a State waives its own

immunity by statute; 3) Congress has abrogated the state immunity clearly and "in furtherance of

particular powers"; or 4) "other [federal] constitutional imperatives . . . take precedence over the

Eleventh Amendment's federal-court bar."  Metcalf & Eddy, Inc. v. P.R. Aqueduct and Sewer

Auth., 991 F.2d 935, 938-39 (1st Cir. 1993).  Any consent to suit or waiver of immunity under

the first two exceptions must be "unequivocally expressed."  See Pennhurst State Sch. & Hosp.

v. Halderman, 465 U.S. 89, 99 (1984).  There is no indication that either the Commonwealth of

Massachusetts or Congress waived Probation's immunity.  See Will v. Mich. Dep't of State

Police, 491 U.S. 58, 66 (1989) (explaining that under § 1983, Congress "had no intention to

disturb the States' Eleventh Amendment immunity and so to alter the federal-state balance in that

respect.").  As a result, sovereign immunity bars Sullivan's claims when "Congress did not

provide such a federal forum for civil rights claims against States." Id.

A fifth exception to sovereign immunity, established by Ex parte Young, 209 U.S. 123 (1908), permits suits against state officials for prospective relief based on ongoing violations of federal law.  See Pennhurst, 465 U.S. at 106.  Here, however, Sullivan seeks only money damages.  The court consequently dismisses Sullivan's claims under §§ 1981, 1983, and 1985(3) against Melia in her official capacity.[3]

### D.  The court declines supplemental jurisdiction over the remaining state-law claims

Melia asks this court to decline to exercise supplemental jurisdiction over Sullivan's remaining state-law claims.  Mem. 11-12.  A district court may "decline to exercise supplemental jurisdiction over a claim" when "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c).  For the reasons explained above, this court is dismissing Sullivan's §§ 1981, 1983, and 1985(3) claims.  These claims provided the court's basis for jurisdiction.  See 28 U.S.C. § 1331.  This court must thus consider "the interests of fairness, judicial economy, convenience, and comity" to decide whether to exercise supplemental jurisdiction over the remaining state-law claims.  See Desjardins v. Willard, 777 F.3d 43, 45 (1st Cir. 2015) (quoting Camelio v. Am. Fed'n, 137 F.3d 666, 672 (1st Cir. 1998)).  The interests of fairness, judicial economy, and convenience point this court toward dismissing the remaining state-law claims given the early stage of Melia's Motion to Dismiss [#10].[4]  Therefore, this court

---

[3] Although bared by the doctrines of absolute immunity and sovereign immunity, Sullivan's claims under §§ 1981 and 1983(5) also fail as a matter of law because Sullivan has not alleged that Melia acted with the requisite discriminatory animus.  To establish a § 1981 claim, Sullivan must establish that Melia discriminated against him on the basis of race.  See Hammond v. Kmart Corp., 733 F.3d 360, 362 (1st Cir. 2013).  Furthermore, under § 1985(3), any alleged conspiracy must be motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus."  Griffin v. Breckenridge, 403 U.S. 88, 102 (1971).  Sullivan has alleged no facts implicating discriminatory motives or animus sufficient to sustain a claim under either §§ 1981 and 1983(5), and his claims under these sections must independently fail.
[4] The court takes judicial notice that Sullivan has filed a similar claim in Middlesex Superior Court against Melia in her official and individual capacities alleging the same state-law claims as

declines to exercise supplemental jurisdiction over any remaining state-law claims, and they are

dismissed without prejudice to any claims Sullivan may have pending in state court.

V.    Conclusion

For the above-stated reasons, Melia's Motion to Dismiss [#10] is ALLOWED.

IT IS SO ORDERED.

December 23, 2015                                         /s/ Indira Talwani
                                                         United States District Judge

---

in this instant action.  See Complaint, Sullivan v. Melia, No. 1581CV04607 (Mass. Super. Ct. June 22, 2015).  That Sullivan may pursue his state-law claims in Massachusetts state court further supports declining supplemental jurisdiction.